UNITED STATES of America,
Plaintiff-Appellee,

v.

Ruth Ann HEMBREE,
Defendant-Appellant.

No. 83–2633.

United States Court of Appeals,
Tenth Circuit.

Feb. 7, 1985.

Stephen S. Trott, Asst. Atty. Gen., and Gloria C. Phares, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

D.D. Hayes of Bonds, Matthews, Bonds, Hayes & Matthews, Muskogee, Okla., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App. P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Appellant, Ruth Ann Hembree, appeals from an order revoking her term of probation. Hembree received a three-year sentence in 1981 following her guilty plea to the charge of acquiring food stamps without authorization. All but six months of that sentence was suspended in favor of two and one-half years of probation. The terms of Hembree's probation included the requirement that she refrain from the violation of any law.

On April 26, 1983, Hembree testified before a federal grand jury in the Eastern District of Oklahoma, investigating the fraudulent voting of absentee ballots in an Oklahoma state primary run-off election. That grand jury later returned indictments against Dan Draper, Jr., Speaker of the Oklahoma House of Delegates, Joe Fitzgibbon, majority floor leader in the House of Delegates, Barney Girdner, and Faye Newton for conspiracy and multiple counts of mail fraud. Hembree was named as an unindicted co-conspirator in the indictment.

In her grand jury testimony, Hembree testified in a manner which did not implicate Dan Draper, Jr. Following her appearance before the grand jury, Hembree was approached by a Mr. Romanger, a postal inspector who had interviewed her several times prior to grand jury testimony. He told Hembree he knew she had lied to the grand jury. (R.Vol. II at 44.) A similar statement was made to Hembree by Assistant United States Attorney Donn Baker.

Hembree then obtained legal counsel who participated in negotiating an informal

immunity agreement whereby, in exchange for her truthful testimony at the forthcoming trial of Dan Draper, Jr., *et al.,* the United States Attorney agreed neither to seek to indict her nor to participate in any proceeding to revoke her probation if such were to occur.

At the Draper trial, Hembree admitted lying to the grand jury when she testified that Draper was not involved in the voting fraud conspiracy. She further admitted lying to postal inspector Romanger on every occasion that he interviewed her.

Based on this testimony, Hembree's probation officer, Officer Willems, petitioned the district court to revoke her probation. The petition claimed that Hembree had committed perjury before the grand jury, conspiracy to commit voter fraud, misprision of felony, and violations of Oklahoma voting laws.

At the revocation hearing, Officer Willems offered in support of the revocation petition a copy of the conditions of probation that Hembree and he had signed as well as the transcript from the *Draper* trial. Hembree called United States Attorney Gary Richardson and Assistant United States Attorney Donn Baker in her defense. Both described the informal immunity agreement to the court; otherwise they did not participate in the proceedings to revoke Hembree's probation.

Based on Officer Willems' testimony, including his references to the *Draper* transcript, the district court found that Hembree had violated the conditions of her probation for the reasons outlined in Officer Willems' petition. As a result, Hembree's probation was revoked.

After the revocation proceedings, Hembree recanted the testimony she gave at the *Draper* trial implicating Draper. This recantation served as the basis for a new trial motion in *Draper*. At the hearing on the new trial motion, Hembree stated that her testimony at the *Draper* trial concerning Draper's involvement in the voting fraud conspiracy was false in several respects. As a result of the inconsistencies between her testimony at the *Draper* trial and her testimony at the new trial hearing, Hembree was convicted on eight counts of perjury in violation of 18 U.S.C. § 1623 (1982). *United States v. Hembree,* No. 84–56 CR (E.D.Okla.1984).

Hembree's primary contention in this appeal, following revocation of her probation, is that use of her testimony from the *Draper* trial in the revocation proceedings violated her rights under 18 U.S.C. § 6002 (Supp. 1984),[1] or, alternatively, her rights under the Fifth Amendment. Hembree also maintains that she was denied due process because the district court was not a neutral and detached hearing body. Finally, she contends she was denied due process by reason of misconduct on the part of the United States Attorney's Office.

### I.

As Hembree's part of the agreement with the United States Attorney's Office granting her informal immunity, she was required to testify truthfully at the *Draper* trial. At the time of the revocation proceedings, the district court did not have the benefit of Hembree's later perjury conviction in considering whether she had violated the terms of her probation. Her testimony at the *Draper* trial, recanting her

---

1. **§ 6002. Immunity generally**
   Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
   (1) a court or grand jury of the United States,
   (2) an agency of the United States, or
   (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
   and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

grand jury testimony, was apparently assumed to have been true. Consequently, it was necessary for the district court to address Hembree's contention that the Government's grant of informal immunity precluded the use of her trial testimony at the revocation proceedings.

■ With the benefit of Hembree's later perjury conviction before us on appeal, however, it becomes apparent, as the Government contends, that Hembree did not satisfy her part of the immunity agreement. That is, her perjury conviction based on inconsistencies between her trial testimony and her testimony at the new trial hearing demonstrates conclusively that she breached her immunity agreement. This issue was specifically addressed in *Rowe v. Griffin*, 676 F.2d 524, 528 (11th Cir.1982): "The only evidence in the record going to Rowe's lack of good faith is testimony indicating that Rowe perjured himself when he testified before the state grand jury and in state trials. Such evidence, if credited, would remove from the state any obligation to uphold the promise of immunity." We hold, therefore, that the immunity agreement between the Government and Hembree was void *ab initio* upon Hembree's conviction for perjury based on her recantation of portions of her trial testimony.

■ Even if we were to close our eyes to Hembree's subsequent perjury conviction, as she apparently would have us do, it does not follow that Officer Willem's use of the *Draper* transcript at the revocation proceedings violated either 18 U.S.C. § 6002 or Hembree's rights against self-incrimination. In this case Hembree was granted informal immunity, meaning that no court order, as required by § 6002, granting her immunity was either requested or obtained. Consequently, Hembree's agreement with the United States Attorney was simply a contract which in no way bound the district court. *See United States v. Feinberg*, 631 F.2d 388, 390 (5th Cir.1980).

■ Secondly, both § 6002 and the Fifth Amendment extend their scope of protec-

tion against self-incrimination to criminal cases only. Though it is true that the phrase "criminal case[s]" is to be broadly construed, *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court has repeatedly stated that probation revocation proceedings are not criminal proceedings. *Minnesota v. Murphy*, —— U.S. ——, 104 S.Ct. 1136, 1147 n. 7, 79 L.Ed.2d 409 (1984); *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). Inasmuch as neither an order granting immunity was ever sought or obtained and because revocation proceedings are not "criminal" in nature, it follows that Hembree's claims under both § 6002 and the Fifth Amendment must fail.

■ With regard to the revocation proceeding itself, Hembree argues that she was denied due process because the district court was not a "neutral and detached hearing body." The thrust of Hembree's argument is that due to the limited role the United States Attorney's Office had elected to maintain in the proceedings, she became "caught in the middle of an interagency dispute between two branches of the government over which she had no control." Brief of Defendant-Appellant at 13. Hembree points specifically to: the district court's initial displeasure with the United States Attorney's Office's meddling with the court's powers by allegedly promising Hembree that revocation proceedings would never be brought; the court's concern over the proper custody of a postal inspector's investigative report; and the court's questioning of Hembree's attorney about the fact that he was the brother-in-law and former law partner of the United States Attorney.

We have examined the record closely and find no merit in any of Hembree's alleged deprivations. It is true that the trial court was upset that the United States Attorney's Office would not participate in the revocation proceedings, thereby leaving the probation office without representation.

**318**

Consequently, the "focus" of the proceedings initially, as Hembree contends, was upon the content of the immunity agreement. It is also true that the trial court was concerned about Assistant United States Attorney Baker's possibly implying to Hembree that revocation proceedings would never be brought. Since this is something only the district court and the probation office are empowered to do, the trial court was rightfully upset. However, after questioning both United States Attorney Richardson and Assistant United States Attorney Baker about their negotiations with Hembree in which she was represented by counsel, the trial court became satisfied that Hembree was promised only that the United States Attorney's Office would stay out of the revocation proceedings, not that the proceedings never would be brought. Furthermore, inasmuch as the United States Attorney's Office would not participate in the proceedings, it became incumbent upon the district court, in Hembree's words, to assume the role of "prosecutor" insofar as he had to question the witnesses himself. Viewed in this light, the court's questioning regarding the custody of the postal report and possible bias caused by the relationship between Hembree's attorney and the United States Attorney should be lauded as indicative of the extent to which the court sought to maintain both the appearance and the existence of neutrality.

 Finally, Hembree maintains that she was denied due process because of misconduct on the part of the United States Attorney's Office in leading her to believe her probation would not be revoked. The district court did find, based on one hurried conversation that transpired between Assistant United States Attorney Baker and Hembree, that Hembree might have *inferred* her probation would not be revoked. The court also found, however, and we agree, that Baker did not specifically promise that Hembree's probation would not be revoked. On the other hand, United States Attorney Richardson testified that he informed Hembree specifically of his office's limited authority regarding the initiation of revocation proceedings. Furthermore, throughout the immunity agreement negotiations, Hembree was represented by counsel. This case demonstrates, we believe, that the United States Attorney's Office should refrain from engaging in any conduct which might lead prospective witnesses to believe they will receive more than can lawfully be delivered. The facts of this case do not, however, demonstrate the sort of reckless misconduct required to establish a due process deprivation.

AFFIRMED.