**UNITED STATES of America, Appellee,**

v.

**Antonio PAPALEO,**
**Defendant, Appellant.**

**No. 88–1013.**

United States Court of Appeals,
First Circuit.

Heard June 7, 1988.
Decided Aug. 1, 1988.

Luis A. Medina Torres, Hato Rey, P.R., by Appointment of the Court, for defendant, appellant.

Jose R. Gaztambide, Asst. U.S. Atty., Criminal Div., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Papaleo was an "in-transit" passenger through Luis Muñoz Marin Airport in Puerto Rico, who, on his way to Germany from South America, was arrested for possessing with intent to import and distribute a sizeable quantity of cocaine. He was convicted by a jury on three counts of drug related charges. Papaleo appeals his conviction, claiming the government violated his contractual or constitutional rights when it failed to honor a plea agreement. He also asserts that he was not brought to trial within the requirements of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* We disagree and affirm his convictions.

## I

After initially pleading not guilty to all charges, Papaleo and the government signed a plea agreement on or about March 13, 1987 whereby Papaleo agreed to plead guilty to one count in the indictment against him in exchange for the dismissal of the remaining two counts. The court scheduled a hearing for the change of plea for March 16. On that day, however, defendant's counsel filed a motion requesting to withdraw as Papaleo's attorney. Because of counsel's motion, the court cancelled the change of plea hearing. Although the court denied this motion to withdraw, on April 2 it granted a similar motion, filed on March 27.

Meanwhile, the government on March 25 filed an informative motion with the court alleging that Papaleo had violated the plea

agreement because "[t]he Change of Plea hearing was cancelled due to problems not related to the Government offer," and that therefore the agreement was withdrawn.[1] A copy of this motion was never received by defendant's original counsel because it was sent to the wrong address. Papaleo and his new attorney, assigned on May 11, did not learn until May 27 that the government had withdrawn the plea agreement. Papaleo, however, does not assert that he at any time acted to his detriment in reliance on the agreement.

The question, thus, is whether the government can unilaterally withdraw a plea agreement when it has not been approved by the court nor relied upon by the defendant. Papaleo argues that the agreement was a valid contract which the government could not unilaterally breach. It is not clear from his brief or from oral argument whether Papaleo also asserts that breach of the agreement is a violation of his fifth amendment due process rights. In any event, we conclude that the government committed neither a constitutional nor a contractual violation.

### A

■ Plea bargaining is "an essential component of the administration of justice" and should be encouraged by the courts. *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). While courts should play no role in the formulation of plea agreements, Fed.R. Crim.P. 11(e)(1), the judiciary must ensure that such agreements are fair and entered into knowingly and voluntarily. *Santobello*, 404 U.S. at 261–62, 92 S.Ct. at 498–99. A court may exercise its discretion to reject an agreement and to refuse to accept a plea of guilty. *Id.* at 262, 92 S.Ct. at 499. Once a court accepts a guilty plea on the basis of an agreement, however, the court can enforce the agreement, requiring the government to perform its promise to the defendant. *Id.; United States v. Reckmeyer*, 786 F.2d 1216, 1223 (4th Cir.), *cert.*

*denied*, 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986); *United States v. Blackwell*, 694 F.2d 1325, 1337 (D.C.Cir. 1982). Conversely, the court can also refuse to allow the defendant to withdraw his plea. *United States v. Ellison*, 798 F.2d 1102, 1104–06 (7th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *United States v. Khoury*, 755 F.2d 1071, 1073 (1st Cir.1985).

"A plea bargain, standing alone, is without constitutional significance...." *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984); *see also Spann v. Wainwright*, 742 F.2d 606, 607 (11th Cir.1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 95, 88 L.Ed.2d 77 (1985). However, when the court approves a plea of guilty pursuant to a plea agreement, thus depriving a defendant of his or her liberty without a trial, the constitution is implicated. 467 U.S. at 507–08, 104 S.Ct. at 2546–47. Due process concerns may also arise prior to the entry of a guilty plea when the defendant detrimentally relies upon the government's promise. *See Government of Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir.1980); *United States v. Hammerman, II*, 528 F.2d 326 (4th Cir. 1975); *cf. United States v. Abou–Saada*, 785 F.2d 1, 5–7 (1st Cir.) (if government agreed not to arrest and prosecute defendant, court may grant defendant post-trial, "appropriate relief" if he relied upon such an agreement), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986). *But see United States v. McGovern*, 822 F.2d 739, 746 (8th Cir.) (defendant not justified in relying substantially on plea agreement until agreement and guilty plea are accepted by the court), *cert. denied*, —— U.S. ——, 108 S.Ct. 352, 98 L.Ed.2d 377 (1987).

■ In the case before us, Papaleo did not enter a guilty plea, did not forgo a jury trial on any charge, and did not otherwise detrimentally rely on the government's promise to drop two charges. He is in no worse position than if no offer had ever been made by the government. *See Scot-*

---

**1.** The government, however, made clear at oral argument that the plea agreement was withdrawn because it learned from Papaleo's counsel, as he was attempting to withdraw from the case, that Papaleo was planning to commit perjury at trial.

*land,* 614 F.2d at 365 ("no rational basis for holding ... that a trial is sufficient for the defendant who has not been offered a plea and insufficient for the one who has"). Therefore, even if Papaleo had accepted the government's plea agreement offer, such an act, alone, would not have created a *constitutional* right to have that bargain enforced.

## B

While plea agreements are a matter of criminal jurisprudence, most courts, including this one, have held that they are also subject to contract principles. *United States v. Kingsley,* 851 F.2d 16, 21 (1st Cir. 1988) (using contractual analysis to enforce plea agreement and award "benefit of the bargain"); *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985) ("plea bargain is contractual in nature and is measured by contract-law standards"), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986); *United States v. Baldacchino,* 762 F.2d 170, 179 (1st Cir.1985) ("plea bargains are subject to contract law principles insofar as their application will insure the defendant what is reasonably due him"); *United States v. Fields,* 766 F.2d 1161, 1168 (7th Cir.1985) ("plea bargain is a contract"); *see Correale v. United States,* 479 F.2d 944, 947 (1st Cir.1973) ("most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining"); *see also United States v. Hembree,* 754 F.2d 314, 317 (10th Cir.1985) (immunity agreement as "simply a contract").[2] A contractual approach to plea agreements ensures not only that constitutional rights are respected, but also that the integrity of the criminal process is upheld as plea agreements are respected as "pledges of public faith." *See* J. Bond, *Plea Bargaining & Guilty Pleas,* 7–56 to –57 (1983) and cases cited therein.

We agree that, to the extent such an agreement satisfies general requirements of contract law and does not violate constitutional principles, statutes, or public policy, it should be enforced.[3]

The plea agreement here at issue stated in pertinent part that "in exchange for defendant's ... plea of guilty as to count one of the indictment, the Government at the time of sentencing will move for the dismissal of counts two and three." Papaleo argues that these somewhat ambiguous words constitute a bilateral contract and not merely an offer. We thus must determine whether the agreement is an exchange of promises or only an offer by the government for a unilateral contract—an offer which the government could withdraw any time before Papaleo started to perform by pleading guilty.

We note that nowhere in the plea agreement is there an explicit promise by Papaleo to do anything. This is understandable in light of the fact that a court cannot force a defendant to plead guilty because of a promise in a plea agreement. *See* Fed.R. Crim.P. 11(c)(3). Unless and until a court accepts a guilty plea, a defendant is free to renege on a promise to so plead.

We recognize that two parties may enter into a contract, even though the agreement lacks "mutuality of obligation" because one party's promise is unenforceable by rule of law. *See* Restatement (Second) of Contracts 17(1), 78, 79. We must assume, however, that the government acted rationally in light of these elementary principles of contract and criminal law when it proposed its plea agreement. Absent more explicit promissory language, we will not read the ambiguous language of the "agreement" as containing bilateral promises such as to bind the government to a contract unen-

---

**2.** *But see United States v. Coon,* 805 F.2d 822 (8th Cir.1986) (ignoring contractual aspects of plea agreement and failing to enforce it although defendant had partially performed pursuant to the agreement).

**3.** Under the facts of this case, we need not decide whether a plea agreement involving alleged federal crimes is subject to local contract law. We note, however, that these agreements include the federal government as a party and, as creatures of federal criminal jurisprudence, involve unique public policy considerations and may require uniform treatment throughout the federal court system. *See Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

forceable against the other party. Thus, pursuant to general contract principles, *see id.* §§ 35(2), 36(1)(c), 45(1), 50(1) & (2), we hold that a plea agreement of this type is no more than an offer by the government: if the defendant pleads guilty and if that plea is accepted by the court, then the government will perform as stipulated in the agreement. Until performance took place by Papaleo, the government was free to withdraw its offer.

## II

The Speedy Trial Act, 18 U.S.C. § 3161 *et seq*, requires in most cases that a defendant's trial begin within seventy days after the date of indictment. 18 U.S.C. § 3161(c)(1). Delays in the commencement of trial caused by various specified events, however, are not included in the calculation of the seventy days. *See* 18 U.S.C. § 3161(h). Papaleo's second claim of error arises from his erroneous calculation of these "excludable days."

Between January 8, 1987, the date on which Papaleo was indicted, and August 3, 1987, the date on which his trial commenced, 207 days passed. Under the misapprehension that eighty of these days were non-excludable, Papaleo believes his trial commenced ten days late. Our review of the record, however, leads us to conclude that only forty-four non-excludable days passed before he was brought to trial, well within the time limit required by the Speedy Trial Act. Rather than detailing our calculations, we present only a brief discussion of those aspects of appellant's interpretation of the Speedy Trial Act which caused him to err.

▮ Three days prior to a scheduled trial date of March 30, 1987, Papaleo's attorney submitted a motion to withdraw as counsel for Papaleo. The trial was continued because of this motion. On April 2, the motion to withdraw was granted and Papaleo was given two weeks to retain successor counsel. He apparently was unsuccessful and on April 27, by motion to the court, he requested legal representation.

Papaleo believes that the period from April 2 to April 27 is not excludable. He is wrong. The Speedy Trial Act states that "[a]ny period of delay resulting from a continuance" is excludable if the court, either orally or in writing, states in the record its reasons for finding that, by granting the continuance, "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The court in this case made such findings in its order of April 2. Although the findings were not made contemporaneously with the issuance of the continuance, the court satisfied the requirements of section 3161(h)(8)(A) for the period in question after April 2.

▮ Papaleo also claims that certain non-excludable time passed after the district court, on June 8, 1987, ordered a mental competency test of his co-defendant. The court ordered that the examination occur on July 16 and that the resulting report be submitted to the court no later than July 31. Co-defendant's counsel, however, notified the court, on July 14, that he had contacted a psychiatrist who had agreed to conduct the evaluation and submit the report to the court by July 21. Papaleo claims that any time beyond that date must be considered non-excludable time.

Papaleo concedes that any delay "resulting from any proceeding, including any examinations, to determine the mental competency ... of the defendant" is excludable, 18 U.S.C. § 3161(h)(1)(A), and that, if reasonable, it is excludable as to him even though it was his co-defendant for whom the exam was ordered, 18 U.S.C. § 3161(h)(7). He contends, however, that the court's failure to acquiesce to co-defendant's demanded testing schedule voids the applicability of section 3161(h)(1)(A) as of the proposed earlier testing date. Papaleo cites no authority for this proposition. We have been unable to find any. Indeed, the current law may be that there is not even a "reasonableness" requirement for the testing schedule arranged by the district court. *See Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). In any event, even if there is such a requirement, the three week time period imposed by the court in this

case certainly was reasonable and well within its discretion, and fully satisfied the spirit of section 3161(h)(1)(A).[4]

■ Finally, appellant recognizes that a "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," is not included in Speedy Trial Act calculations. 18 U.S.C. § 3161(h)(1)(F). His calculations reflect, however, that he fails to recognize that both the date on which the motion is filed and the date on which the court disposes of the motion are part of this excludable period. *United States v. Yunis*, 723 F.2d 795, 797 (11th Cir.1984); *see also United States v. Simmons*, 763 F.2d 529, 530 n. 1 (2d Cir.1985).

Because of these misunderstandings of the Speedy Trial Act, Papaleo has miscalculated the time period within which his trial should have begun. Prior to his trial, only forty-four days had passed for purposes of the Speedy Trial Act.

Papaleo's conviction is *affirmed.*

---

4. Papaleo also claims that the district court erred when, on July 8, it reset the trial date to August 3 so that the court could receive the results of the psychiatric examination prior to trial. He claims that the court should have first made an "ends of justice" determination before resetting the date, pursuant to 18 U.S.C. § 3161(h)(8). Papaleo apparently misunderstands that subsection. It imposes no *requirement* on a district court judge and is applicable only when determining excludable time under the Speedy Trial Act. Secondly, even under the Act, that subsection is wholly inapplicable to excluding days as a result of a psychiatric examination pursuant to section 3161(h)(1)(A).