**UNITED STATES of America, Plaintiff,**

v.

**CHI KEUNG CHIM, Defendant.**

**No. CR–88–637.**

United States District Court,
E.D. New York.

March 6, 1989.

conspiring to import heroin in violation of 21 U.S.C. § 963; knowingly and intentionally importing heroin in violation of 21 U.S.C. § 960(a)(1) and knowingly and intentionally possessing heroin with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Thereafter, discussions ensued between the defendant and the government with a view towards achieving a more favorable disposition of the charges against him. Those discussions resulted in an offer extended to the defendant by the government to plead guilty to a lesser included offense which would be punishable by a term of imprisonment of not less than five and not more than forty years, rather than a term of not less than ten and not more than life if he were found guilty of the crimes as charged in the indictment. That offer, the defendant was advised, was to remain in effect until January 6, 1989. The case was scheduled for trial at 9:30 a.m. on January 9, 1989.

The court was informed that the defendant would accept that offer and the matter was calendared for 2:15 p.m. on Friday, January 6th at which time the defendant would plead guilty to a superseding information by which he would be charged with the lesser included offense. The court was later advised that the defendant had decided to reject the offer and would go to trial as scheduled on Monday, January 9th. The defendant, together with co-defendant Yong Wei Shi, was present on January 9th and a jury was selected. (It should be noted that co-defendants Kai Ming Cheung and Kenny Chen pleaded guilty on January 3 and January 5, 1989, respectively.) Immediately following the selection of the jury and after being informed that the government would not reinstate its expired offer, the defendant pleaded guilty to the three counts of the indictment. At all times prior to and up to and including the entry of his plea, the defendant was represented by Thomas White, Esq. The trial of co-defendant Shi proceeded and on January 12, 1989 the jury returned a verdict of acquittal on all counts.

Peter E. Ball, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

John H. Jacobs, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

On November 7, 1988, the defendant, together with three others, was indicted for

Private counsel, John H. Jacobs, was thereafter retained to represent this defen-

dant.[1] On February 13, 1989, the defendant filed a motion seeking an order permitting him to withdraw his guilty plea pursuant to Rules 11(c)(1), 11(d) and 32(d) of the Fed.R.Crim.P. and "ordering specific performance of a previously made plea offer." Mr. Jacobs acknowledged that he was in the courtroom and conferred with the defendant immediately prior to the entry of his guilty plea.

■ Rule 11(c)(1) provides in relevant part that prior to accepting a guilty plea the court must inform the defendant in open court and determine that he understands the nature of the charge to which he offers to plead guilty, the mandatory minimum and maximum penalties provided by law, including the effect of any special parole term. In his affidavit (par. 20) Mr. Jacobs swears that from an examination of the minutes of the proceedings at which the defendant pleaded guilty, it appears that the plea was entered by the defendant without a full understanding of the rights he was waiving and the minimum sentence involved. The length of this opinion will not be expanded by reciting those portions of the minutes of the proceeding which belie that assertion. Suffice it to say that the court has examined the minutes which clearly reflect that the defendant was addressed personally in open court and a determination was made that he understood the nature of the charges to which his plea was offered, the mandatory minimum and maximum penalties provided by law with respect to each charge including the effect of any term of supervised release. (Tr. 2, 5, 6, 8–11).

Rule 11(d) provides in relevant part that prior to accepting a plea of guilty the court must determine that the plea is voluntary and not induced by force or threats or of promises apart from a plea agreement. "The court shall also inquire as to whether the defendant's willingness to plead guilty ... results from prior discussions between an attorney for the government and the defendant or the defendant's attorney." The minutes of the proceeding clearly reflect that the defendant entered his plea of guilty voluntarily and not as a result of force or threats. And when the court inquired whether the plea was in consideration of any agreement between the defendant and the government, the defendant's attorney responded "No, your Honor"; the government attorney responded "Absolutely no agreement, your Honor." and when the defendant was asked whether "anybody made any promise to you as to what your sentence will be", he responded, "No promise at all." The defendant does not and cannot assert that his plea of guilty was in reliance upon any agreement.

In his sworn affidavit, Mr. Jacobs asserted that the defendant informed him that when being advised of the minimum and maximum penalties during the plea allocution, Mr. White "leaned over and told him privately not to worry that if he came in next week and spoke to the prosecutor he wouldn't have to do the 10 years. It was on the basis of these remarks that he waived his rights and plead (sic) guilty." In response to an inquiry by the court as to whether he inquired of Mr. White as to the truth of that statement prior to preparing his affidavit, Mr. Jacobs replied that he did not. Mr. Jacobs called Mr. White as a witness at the hearing on this motion and Mr. White unequivocally denied making such a statement. It bears repetition to note that the defendant stated that no promise was made to him regarding his sentence and that he had previously been advised by the court that he was sworn to tell the truth and that false answers to the court's questions might subject him to a charge of perjury. (Tr. 2–3). The defendant did not elect to testify at the hearing and the court credits the sworn testimony of Mr. White.

The defendant also asserts that his plea was flawed by the failure of the court to explore with him at the time discussions regarding cooperation he apparently had with the United States Attorney. There was, indeed, references to cooperation during the colloquy between counsel and the

---

1. An inquiry might be appropriate concerning the veracity of the defendant's claimed indigency leading to the assignment of counsel in accordance with the CJA.

court during the course of the plea allocution. The minutes reflect that the United States Attorney would listen to such information as the defendant was willing to impart as he would with anybody else. (Tr.4). The defendant makes no claim that he offered to cooperate or to impart valuable information to the government which the government rejected.[2]

Needless to say, the worth of any information imparted rests entirely with the government as does the determination whether or not to move the court to consider a downward departure from the sentencing guidelines. Guideline 5K1.1. It is plain, however, that the defendant understood that he had no agreement of any kind with the government and that no promise had been made to him regarding his sentence.

■ Turning to the defendant's contention that a plea agreement did exist between the government and the defendant which the court should direct the government to specifically perform, that contention lacks merit for the following reasons: "While plea agreements are a matter of criminal jurisprudence, most courts ... have held that they are also subject to contract principles." *United States v. Papaleo,* 853 F.2d 16, 19 (1st Cir.1988). It would be an affectation of research to cite cases for the hornbook principle that, questions of consideration aside, an enforceable contract requires an offer and acceptance. "The offer creates a power of acceptance permitting the offeree by accepting the offer to transform the offeror's promise into a contractual obligation." Calamari and Perillo, The Law of Contracts, § 2–5 (2d ed.

1977). The power to accept an offer may be terminated by the lapse of time. That is to say, if the offeror states that acceptance must be on or before a given day, the power to accept will lapse at the end of that day. Calamari and Perillo, *supra,* § 2–23(a). Those elementary principles are precisely applicable here. The plea offer extended to the defendant fixed a specific time for its acceptance and any effort to accept it at a later date was ineffective. The defendant's notice of motion quite correctly seeks specific performance "of a previously made plea offer." Nowhere do his moving papers suggest that the offer, while it was still viable, was ever accepted.

"A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of ... any ... constitutionally protected interest." *Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984). In *Mabry,* a prosecutor proposed to defendant's attorney that in exchange for a plea of guilty to a specified offense, a sentence of 21 years to be served concurrently with other sentences would be recommended. That offer was communicated to the defendant who agreed to accept it and his acceptance was communicated to the prosecutor who then advised counsel that a mistake had been made and the offer was withdrawn. The prosecutor proposed instead, that in exchange for a guilty plea he would recommend a stated sentence to be served consecutively to the defendant's other sentences. The defendant rejected the new offer and stood trial. After a mistrial was

---

**2.** If, indeed, such a colloquy should have been pursued then failure to do so was surely a variance which did not affect a substantial right and should be disregarded. See Rule 11(h) which was designed to obviate the necessity for observing a prescribed litany satisfied only by a slavish adherence to a set text which would exalt form over substance. *See, e.g., United States v. Saft,* 558 F.2d 1073, 1079 (2d Cir.1977). Instructive is the observation of the Court in *United States v. Timmreck,* 441 U.S. 780 at 784, 99 S.Ct. 2085 at 2087–88, 60 L.Ed.2d 634 (1979).

... [t]he concern with finality ... has special force with respect to convictions based on guilty pleas.

"Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea." *United States v. Smith,* 440 F.2d 521, 528–529 [ (7th Cir.1971) ] (Stevens J., dissenting).

declared, plea negotiations resumed resulting in the acceptance of the second offer. In deciding that the plea cannot be collaterally attacked and dismissing a petition for a writ of habeas corpus under 28 U.S.C. § 2254, the Court held that "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel may not be collaterally attacked.... It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired."[3] 467 U.S. at 508–09, 104 S.Ct. at 2547. The consensual character of this defendant's plea has not been called into question, nor is there any claim that the defendant relied upon any agreement to his detriment.

*United States v. Papaleo, supra,* is also instructive. There, the defendant and the government agreed that the defendant would plead guilty to one count of an indictment in exchange for the dismissal of the remaining counts. Approximately three weeks later, the court granted a motion to withdraw filed by the defendant's attorney. Two days prior to the filing of that motion the government filed an "informative motion" alleging that the defendant breached his plea agreement and that the agreement was, therefore, withdrawn. A copy of that motion was never received by the defendant's original counsel. The defendant's new attorney did not learn until approximately two months later that the government had withdrawn the plea agreement. The defendant did not assert that he at any time relied upon the agreement to his detriment. The issue before the court was whether the government could unilaterally withdraw a plea agreement that had neither been approved by the court nor relied upon by the defendant. The court held that the government committed neither a constitutional nor a contractual violation. Pursuant to general contract principles, the court state, the plea

agreement was no more than an offer by the government which the government will perform as stipulated if the defendant pleads guilty and if that plea is accepted by the court. *Papaleo* was cited with approval by this circuit in *United States v. Alexander,* 869 F.2d 91 (2d Cir.1989). It is significant to note that the decision in *Papaleo* addressed an *agreement* as distinguished from the facts here, which implicate only an *offer.*

■ The defendant also predicates his motion upon Rule 32(d), F.R.Crim.P. which provides that withdrawal of a plea may be permitted "upon a showing by the defendant of any fair and just reason." His contention, in essence, is that it is inherently unfair and unjust to insist that the defendant proceed to trial on January 9th and be exposed to a mandatory minimum sentence of ten years if convicted or plead guilty with the same consequence when the government was willing, on January 6th, to accept a plea to an offense requiring a mandatory minimum sentence of five years. The defendant characterizes the government's stance as "arbitrary, capricious and vindictive" and reasonable persons might readily agree that the characterization has merit. The question then presented to the court is given a guilty plea knowingly and voluntarily entered with full awareness of the consequences, should the defendant be permitted to withdraw it because the court believes that considerations of prejudice aside, the government's position is harsh?

■ The basic principles are clear. A defendant has no absolute right to withdraw his plea. *United States v. Burnett,* 671 F.2d 709, 712 (2d Cir.1982). The defendant bears the burden of satisfying the court that valid grounds for withdrawal exist and that permitting withdrawal would be "fair and just" taking into account such

---

**3.** That *Mabry* came to the Court via 28 U.S.C. § 2254 rather than via Rule 32(d) has no legal significance. The results in § 2255 and Rule 32(d) guilty plea cases have generally been the same. *See, e.g., Brooks v. United States,* 424 F.2d 425 (5th Cir.1970) (§ 2255) and *United States v. Bluso,* 519 F.2d 473 (4th Cir.1975) (Rule 32(d)); *United States v. Masthers,* 539 F.2d 721 (D.C.Cir.1976) (§ 2255) and *Kienlen v. United States,* 379 F.2d 20 (10th Cir.1967) (Rule 32); *Walters v. Harris,* 460 F.2d 988 (4th Cir.1972) (§ 2255) and *United States v. Hawthorne,* 502 F.2d 1183 (3rd Cir.1974) (Rule 32(d)).

prejudice as the government may suffer as a result. *United States v. Figueroa,* 757 F.2d 466, 475 (2d Cir.1985). In passing on a motion to withdraw a guilty plea, the district court has broad discretion. *United States v. Saft,* 558 F.2d 1073, 1083 (2d Cir.1977).

That the defendant's plea was entered knowingly and voluntarily and with a full awareness of the consequences and without any agreement between him and the government inducing that plea is established beyond cavil from a reading of the transcript of the plea proceedings. His assertion that the court should have inquired about any discussions he may have had regarding the effect, if any, of his cooperation, is unpersuasive if not specious. His cooperation may be extended prior to sentencing and if given, be considered to the degree deemed appropriate by the court at the time of sentence. His cooperation can not effect the mandatory minimum of either five or ten years. It was as to the mandatory minimum that he was required to make an election whether to accept or reject the government's offer prior to the time the offer was to expire. The advancement of that reason for permitting withdrawal of his plea can hardly be deemed a "fair and just" one. And to the extent that the court might be inclined to pursue the desirability or implications of cooperation, Rule 11(e)(1) prohibiting the court from participating in plea discussions would curb that inclination.

Even if the defendant's reasons were "fair and just", the government urges that it would be prejudiced because it has already tried his co-defendant and thereby previewed for him the government's case. In addition and of greater significance in this regard, affording a trial to this defendant now would require the government to arrange for the presence of two witnesses from Hong Kong whose testimony is essential. Those witnesses were here and testified in the trial of the co-defendant and

have since returned. The government also cites as a basis for a finding of prejudice, the burden imposed upon the court in trying the case twice. The authorities leave no doubt that those factors are quite relevant on the issue of prejudice and would suffice as grounds for denying the defendant's motion. *See, e.g., United States v. Strauss,* 563 F.2d 127 (4th Cir.1977); *United States v. Barker,* 514 F.2d 208, 222 (D.C.Cir.), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).[4] The factors of prejudice, which the court regards as substantial, must be considered within the context of the following observation in *Barker,* 514 F.2d at 221:

> Were withdrawal automatic in every case … the guilty plea would become a mere gesture, a temporary and meaningless formality, reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but "a grave and solemn act" which is "accepted only with care and discernment."

The persuasive factors of prejudice are, however, essentially irrelevant here for the reason that the defendant does not assert his innocence which he hopes to establish at trial, but merely asserts the right to "enforce" the government's withdrawn offer to permit him to plead to a lesser included offense, punishable by a mandatory minimum of five years. For the reasons already stated, he does not have that right.

I wish to discuss two additional considerations disturbing to the court in the setting of this case and not addressed by either the government or the defendant. First, what is the meaning of the phrase "fair and just" in Rule 32(d). An examination of what I believe to be more than a fair sampling of the judicial literature as to that convinces me of the accuracy of the following observation in *Barker* at 220:

> Needless to say, the terms "fair and just" lack any pretense of scientific exactness. As a Court of Appeals will re-

4. Another significant factor is the time elapsed between the plea and the motion to withdraw it. More than four weeks elapsed between those two events. "The movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case." 514 F.2d at 222. Those standards have not been met.

verse denial of a withdrawal motion only upon finding an abuse of discretion, the precise "meaning" of the [fair and just] standard lies buried in the unreported actions of federal trial judges.

The Notes of the Advisory Committee on Rules to the 1983 Amendment of Rule 32(d) indicate that the "fair and just" standard was derived from this dictum in *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927): "The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial *if for any reason the granting of the privilege seems fair and just.*" (emphasis added). Exposing this defendant to a ten year mandatory minimum three days after the government was willing to accept a plea to a lesser included offense with an exposure of a five year mandatory minimum would create the perception of unfairness and unjustness and might induce the court to grant this motion on condition that the defendant does in fact enter a knowing and voluntary plea to the lesser included offense.[5]

The second disturbing consideration arises from the statement by the government at page 7 of its letter response to this motion, as follows:

> Mr. Jacobs contends that there will be no waste of money, time and resources because after withdrawing his plea, Mr. Chim will plead guilty under the terms previously offered. *However, the government is not prepared at this juncture to say that it would offer those same terms to Chim again.* (emphasis added)

In the light of the foregoing emphasized sentence, were the court to grant the motion as indicated above it might trespass upon the executive power which is vested in the President of the United States who, in Article II, section 3 is directed to "take care that the laws be faithfully executed ..." which is effectuated through his alter-ego, the Attorney General. *Ponzi v. Fessenden*, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922). Neither the Congress nor the

courts are empowered or directed to enforce the laws in Article I or Article III. In *United States v. Cox*, 342 F.2d 167 (5th Cir.1965), the court wrote, at page 171:

> Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.

That view represents the law in this circuit. *See, Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 379 (2d Cir.1973); *United States v. Colombo*, 869 F.2d 149, 152 (2d Cir.1989).

The relevance of this principle to the issue before me is clearly demonstrated in *Newman v. United States*, 382 F.2d 479 (D.C.Cir.1967). There the United States Attorney consented to a guilty plea tendered by one co-defendant for a lesser included offense under indictment while refusing to consent to the same plea by the defendant who claimed that he was thus denied his constitutional rights of due process and equal protection. Chief Justice (then Circuit Judge) Burger wrote:

> In the United States Attorney's capacity as agent and attorney for the Executive, he is responsible to his principal and the courts have no power over the exercise of his discretion or his motives as they relate to the execution of his duty within the framework of his professional employment.... It is assumed that the United States Attorney will perform his duties and exercise his powers consistent with his oath; and while this discretion is subject to abuse or misuse just as is judicial discretion, derivations from his

---

**5.** I am mindful even as I express this view that "The Due Process Clause is not a code of [solici- tude] for prosecutors;" *Mabry v. Johnson, supra,* 467 U.S. at 511, 104 S.Ct. at 2548.

duty as an agent of the Executive are to be dealt with by his superiors.

... [i]t is not the function of the judiciary to review the exercise of executive discretion whether it be that of the President himself or those to whom he has delegated certain of his powers.

The concurring opinion would reserve judicial power to review "irrational" decisions of the prosecutor. We do our assigned task of appellate review best if we stay within our own limits, recognizing that we are neither omnipotent so as to have our mandates run without limit, nor omniscient so as to be able to direct all branches of government. The Constitution places on the Executive the duty to see that the "laws are faithfully executed" and the responsibility must reside with that power.

Thus constrained by the Constitutional limitations upon my power, I reluctantly refrain from directing the government to grant the defendant's request to now be permitted to plead to the lesser included offense following the withdrawal of his previously entered plea and deny his motion.

SO ORDERED.