<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1128

                         UNITED STATES,

                           Appellant,

                               v.

                 EDWIN MOURE-ORTIZ, A/K/A AGUI,

                      Defendant, Appellee.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

        [Hon. Salvador E. Casellas, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                     Selya, Circuit Judge,

               and Acosta, Senior District Judge.

                     _____________________

   Antonio R. Bazn, Assistant United States Attorney, with whom
Guillermo Gil, United States Attorney, and Jos A. Quiles-Espinosa,
Senior Litigation Counsel, were on brief, for appellant.
   Bruce J. McGiverin, by appointment of the Court, for appellee.

                      ____________________

                          July 8, 1999
                      ____________________

        ACOSTA, Senior District Judge.  This is an appeal by the
Government from a sentence imposed following a guilty plea pursuant
to a plea agreement tendered under Fed. R. Crim. P. 11(e)(1)(C).  
We have jurisdiction under 28 U.S.C.  1291 and 18 U.S.C.
3742(b), (c) and review de novo.  United States v. Ticchiarelli,
171 F.3d 24 (1st Cir. 1999).  We reverse and remand.
 Defendant Edwin Moure Ortiz ("Moure") was indicted by a
grand jury on February 28, 1996, and charged with conspiracy to
distribute in excess of five kilograms of cocaine (Count One);
aiding and abetting in the possession with intent to distribute two
kilograms of cocaine (Count Two); carrying a firearm during and in
relation to a drug trafficking crime (Count Three); and using a
communication facility to commit and facilitate the crime of
distribution of narcotics (Count Four).
 On March 4, 1997, Moure  pled guilty to counts Two and
Three, conditioned upon Moure's right to appeal the district
court's denial of his motion to dismiss the firearms count.  
Sentence was scheduled for July 11, 1997.
 Prior to sentencing, Moure filed a motion for downward
departure pursuant to United States Sentencing Guidelines
("Guidelines")  5H1.4 due to his "extraordinary physical
impairment."  He also requested that Dr. Wilfredo Daz Romero, the
medical director of MDC Guaynabo, be permitted to testify regarding
his medical condition.
 The Court held a hearing on July 10, 1997 at which
Dr. Daz Romero testified that Moure suffered from polycythemia
vera, a condition which constituted an "extraordinary physical
impairment" rendering Moure seriously infirm.  The Court took
Moure's request for downward departure under advisement and
sentencing was rescheduled for July 29, 1997.
 On July 29, 1997, the Court granted a motion by Moure to
withdraw his guilty plea.  Subsequently, the United States and
Moure negotiated an 11(e)(1)(C) plea agreement pursuant to which
Moure would plead guilty to Count Two and the remaining counts
would be dismissed.  This second plea agreement called for a
specific sentence of 84 months of imprisonment based on an adjusted
offense level of 28.
 On August 22, 1997, the Court held a change of plea
hearing, during which Moure entered a plea of guilty to Count Two
of the indictment.  After advising the defendant of his rights, the
Court stated as follows:
   Very well, the plea agreement is hereby
 order[ed] filed.  The Court does hereby accept
 the plea agreement and will sentence the
 defendant in accordance with the plea
 agreement after receiving the pre-sentence
 report.
 After the defendant had accepted the Government's version
of the facts, the district court also advised the defendant as
follows:
   Even though the Court has accepted the plea
 agreement, I want you to be aware that the
 guideline sentence in the pre-sentence report
 may be different from the one that has been
 contemplated in these negotiations as a result
 of the findings of the pre-sentence report.  
 But the Court in this hearing has accepted the
 plea agreement and will sentence you according
 to the plea agreement. (emphasis ours).

 Having thus declared its intentions for the record, the  
parties were nonplussed when the Court announced at the sentencing
hearing held on October 10, 1997, that it would, sua sponte, depart
downward from the agreed-to specific sentence of 84 months due to
Moure's extraordinary physical impairment.
 Despite the Government's objections to the Court's
unanticipated downward departure, and its explanation that Moure's
physical condition had been taken into account during the
renegotiations that followed defendant's withdrawal of his original
guilty plea, and despite the Court's acknowledgment that "[t]he
usual case... is that the Court either accepts the plea agreement
or gives the defendant an opportunity to withdraw his plea.", the
Court, finding that extraordinary circumstances and the interests
of justice so warranted, proceeded to depart downward from the
expected 84 month sentence to the Guidelines level identified in
the Presentence Report, and sentenced defendant to 63 months.
                          DISCUSSION  
 A contractual approach to disputes over plea agreements  
"ensures not only that constitutional rights are respected, but
also that the integrity of the criminal process is upheld."  United
States v. Papaleo, 853 F.2d 16, 19 (1st Cir. 1988).
 A principal purpose of an 11(e)(1)(C) agreement is to
permit the Government and the defendant to come to an agreement as
to a specific sentence.
 Thus, Rule 11(e) Fed. R. Crim. P. provides in pertinent
part as follows:
 (E) Plea Agreement Procedure
    (1) In General.  The attorney for the government and
the attorney for the defendant or the defendant when acting pro se
may engage in discussions with a view toward reaching an agreement
that, upon the entering of a plea of guilty or nolo contendere to
a charged offense or to a lesser or related offense, the attorney
for the government will do any of the following:
   (A) move for dismissal of other charges; or
   (B) make a recommendation, or agree not to oppose
the defendant's request, for a particular sentence, with the
understanding that such recommendation or request shall not be
binding upon the court; or
   (C) agree that a specific sentence is the
appropriate disposition of the case.

 Once the court accepts an 11(e)(1)(C) agreement, an
expectation is created in the parties that the court--if it
proceeds to impose sentence--will indeed sentence defendant in
conformity with the dispositions of the contract.
 After the district court provisionally accepted the
agreement, its only recourse was to reject the agreement if it
found the negotiated sentence unsatisfactory.  "If the Court did
not find the terms [of the agreement] appropriate, its only option
was to reject the agreement in its entirety."  United States v.
Mukai, 26 F.3d 953, 956 (9th Cir. 1994).  See also United States v.
Gilchrist, 130 F.3d 1131, 1134 (3d Cir. 1997) ("An 11(e)(1)(C) plea
agreement, once accepted, binds the district court notwithstanding
departures from the applicable guidelines"); United States v. Veri,
108 F.3d 1311, 1315 (10th Cir. 1997) ("[I]f a sentencing court
accepts a Rule 11(e)(1)(C) agreement, it is bound by the agreement
and may not modify it".).
 In defense of his sentence, Moure argues that Rule 11(e)
does not prohibit the Court from unilaterally imposing a more
lenient sentence than that specified in a Rule 11(e)(1)(C)
agreement.  We disagree.
 The rule plainly contemplates that plea agreements
executed pursuant to subdivisions (e)(1)(A) or (C) are binding on
the district court.  "[C]ritical to a type (A) or (C) agreement is
that the defendant receive the contemplated charge dismissal or
agreed-to sentence." Fed. R. Crim. P. advisory committee's note
(1979 amendment).
 Moreover, the rule does not authorize a district court to
accept the agreement at a plea hearing, advise  the defendant that
he or she will be sentenced in accordance with its terms on the one
hand, and on the other disregard its own pronouncements and modify
the agreement in accordance with a personal notion of what
constitutes a just sentence.
 This interpretation is firmly supported by Rule 11(e)'s
history:
   The legislative history of 11(e)(3) shows that
 Congress wished to preclude a district court
 from accepting a plea agreement which provides
 for a specific sentence and then imposing a
 more lenient sentence than that provided for
 in the plea agreement.  The version of
 11(e)(3) proposed by the Supreme Court in 1974
 stated that "the court shall inform the
 defendant that it will embody in the ...
 sentence the disposition provided for in the
 plea agreement or another disposition more
 favorable to the defendant than that provided
 for in the plea agreement."  The House
 Judiciary Committee then deleted the language
 "or another disposition more favorable to the
 defendant than that provided for in the plea
 agreement," and the House affirmed the
 committee's action by rejecting on the floor
 an amendment offered to restore the Supreme
 Court's version of the rule.  The Senate
 accepted the House's version of the rule.

   By deleting the Supreme Court's "more
 favorable to the defendant" language, Congress
 evidenced its intent to require a district
 court to sentence a defendant in accordance
 with the plea agreement.

 United States v. Semler, 883 F.2d 832, 833-34 (9th Cir.
1989)(internal citations omitted).
 Finally, we reject Moure's contention that while Rule
11(e) provides that the defendant may withdraw his plea if a higher
sentence is contemplated, it does not provide for the Government to
withdraw from the agreement if a lower sentence is envisioned by
the district court. "A district court which unilaterally reduces
the sentence provided for in an accepted plea agreement deprives
the prosecutor of the 'benefit of his bargain'. . .".  Semler, 883
F.2d at 834, an action which he or she is specifically authorized
to appeal pursuant to statute.  See 18 U.S.C. 3742(c)(2).
 Accordingly, we remand the case to the district court
with instructions to vacate the sentence previously imposed, vacate
the dismissal of the other counts, and then either sentence the
defendant according to the terms of the plea agreement or reject
the agreement and afford the Government and Moure an opportunity to
renegotiate its terms (or in the alternative, try the case).
 REVERSED AND REMANDED.

</body>

</html>