**F I L E D**

**UNITED STATES COURT OF APPEALS**

**August 2, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE GARCIA-CARDENAS,

    Defendant-Appellant.

No. 06-2304

(CR-04-2400 LH)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **KELLY**, Circuit Judges.

A jury found Defendant guilty of possession with intent to distribute 500 grams or more of a substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1), and conspiracy to commit the same in violation of 21 U.S.C. § 846. The district court sentenced Defendant to 235 months in prison. Defendant argues on appeal he should be resentenced because the district court (1) erred in denying his request for a mitigating role adjustment; and (2) improperly considered his alien status when calculating his sentence.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

We have jurisdiction pursuant to 18 U.S.C. § 3742(a), and affirm.

I.

The relevant historical facts presented at trial established that after observing several traffic violations, New Mexico State Police Officer Arcenio Chavez stopped a vehicle driven by Roberto Baez-Chavez. Defendant was a passenger in the vehicle. A consensual search of the vehicle uncovered approximately twenty packages of methamphetamine inside the vehicle's spare tire. Officer Chavez arrested both Defendant and Baez-Chavez. At the time of the arrest, Defendant and Baez-Chavez were each carrying a cell phone. Defendant was also carrying a piece of paper showing what appeared to be payments he received for transporting narcotics, a document listing his address in Huntington Park, California, and a receipt for a stay in a motel in Albuquerque, New Mexico on September 26, 2004. During a post-arrest interview, Defendant admitted he expected payment for transporting the methamphetamine from Los Angeles, California to Albuquerque.

As part of the investigation, the state police reviewed the call logs on Defendant and Baez-Chavez's cell phones and discovered each received several calls from an individual in Albuquerque named Juan Segura. During a search of Segura's property, the state police found a Ford Explorer with a hidden compartment used for transporting narcotics. The certificate of title for the Explorer showed the owner resided at the address Defendant used in Huntington Park. The police also determined the owner of the vehicle Baez-Chavez was driving at the time of Defendant's arrest resided at Defendant's

2

Huntington Park address. A search of Segura's phone records revealed thirteen phone calls between Segura and Defendant from September 22, 2004 to October 1, 2004. Ten calls occurred between Segura and Baez-Chavez from November 6, 2004 to November 10, 2004, the day Defendant was arrested. The state police also inspected the Albuquerque motel records in which Defendant previously stayed. The records showed Defendant stayed in the Albuquerque motel on August 16, 2004, August 20, 2004, and from September 26, 2004 to September 28, 2004.

After the jury convicted Defendant but prior to sentencing, Defendant requested a mitigating role adjustment, arguing he was a "mere mule" who was to be paid a minimal amount of money for transporting the methamphetamine. See U.S.S.G. § 3B1.2. The Government opposed Defendant's request arguing the evidence presented at trial showed Defendant was more than a one-time courier in what was a large distribution ring. The district court agreed with the Government and denied Defendant's request. The court sentenced Defendant to 235 months in prison. This appeal followed.

II.

Defendant first argues the district court erred by refusing to grant him a mitigating role adjustment to his sentence pursuant to U.S.S.G. § 3B1.2. According to Defendant, an adjustment is proper because he was a minor or minimal participant in the criminal offense. We review a "sentencing court's refusal to award a defendant a minor or minimal participant status for clear error because it is a finding of fact." United States v. Virgen-Chavarin, 350 F.3d 1122, 1131 (10th Cir. 2003) (internal quotations omitted). In

3

doing so, we "give due deference to the court's application of the sentencing guidelines to the facts." Id.

Section 3B1.2 of the Sentencing Guidelines provides for a four level reduction to a defendant's offense level '[i]f the defendant was a minimal participant" in the criminal offense, a two level reduction "[i]f the defendant was a minor participant," or a three level reduction if defendant's role in the criminal offense falls between "minor" and "minimal." A reduction is proper only for "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." United States v. Salazar-Samaniega, 361 F.3d 1271, 1277 (10th Cir. 2004) (internal quotations omitted). The inquiry focuses on "the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense." Id. Defendant bears the burden of proving by a preponderance of the evidence his minor or minimal role in the criminal offense. See Virgen-Chavarin, 350 F.3d at 1131.

Based on the record before us, we agree with the district court. Defendant's role in the criminal offense was neither minor, minimal, or anywhere in between. Defendant's involvement in the ongoing methamphetamine distribution ring prior to his arrest was significant. The record supports the conclusion Defendant transported methamphetamine to Albuquerque on multiple occasions, not just on the day he was arrested. The phone records and motel records showed Defendant had been in Albuquerque twice in August 2004 and once in September 2004. Additionally, Defendant admitted being in

4

Albuquerque in July 2004. The vehicle in which Defendant was a passenger when he was arrested, and the vehicle at Segura's property were both owned by individuals whose address was the same address Defendant used in Huntington Park, California. And, both vehicles were used for transporting narcotics. Furthermore, according to a DEA agent who testified at the suppression hearing, the paper in Defendant's possession listing varying amounts of money was consistent with the records drug couriers maintain of money owed for transporting narcotics. Based on this evidence, the court did not clearly err in denying Defendant's request for a mitigating role adjustment.

Defendant also argues the court erred by considering the danger of methamphetamine as well as the quantity Defendant transported in denying the adjustment. In support of his argument, Defendant cites to the following comment the court made during the sentencing hearing:

> This involved conviction of a great deal of methamphetamine. Methamphetamine has become one of the most poisonous of substances that is commonly used in this country and has caused many, many deaths, and people to become incompetent as a result of its use and is a very dangerous, dangerous, drug. I think any involvement in the transportation and distribution of something more than 15 pounds of this dangerous poison requires strict response.

The court correctly took into account the quantity and nature of the drug Defendant transported in calculating Defendant's offense level. See U.S.S.G. § 2D1.1(c)(1). But, if the court again considered the quantity and nature of the drug when ruling on Defendant's motion for the minor participant adjustment, that might give us concern. As we have noted, "taking the quantity into account once again in deciding

5

upon the applicability of adjustments for minimal or minor participant risks imposing double punishment." United States v. Caruth, 930 F.2d 811, 816 (10th Cir. 1991). After reviewing the record, however, we are satisfied the court did *not* rely on the quantity and nature of the drug in denying Defendant's request for a mitigating role adjustment. The sentencing transcript clearly shows the district judge ruled on Defendant's motion for minimal role adjustment before he made his statements concerning the dangers of methamphetamine. Prior to discussing the dangerous nature and quantity of the methamphetamine, the court stated: "Well, I heard the testimony. I was impressed with the complicity of the defendant in a number of similar transactions, and that he was certainly complicit in this very serious crime. I am not inclined to reduce the guideline range for him." Only after the court made this ruling did it address the danger and quantity of methamphetamine.

### III.

Defendant further argues the sentencing court violated his right to due process when it considered his status as an illegal alien in calculating his prison sentence. After sentencing Defendant, the court made the following remark:

> I will comment further with respect to the defendant's conduct here, it's one thing to have an illegal alien come to the United States to take advantage of our freedoms and laws here to make an honest living. But for an illegal to come up here and try to make a living by transporting such a dangerous poison is quite different, and I think it needs to be treated as such.

According to Defendant, the court's remark illustrates that Defendant's alien status factored into the sentencing determination. We review de novo a constitutional challenge

6

to a sentence. See United States v. Tucker, 451 F.3d 1176, 1180 (10th Cir. 2006).

Sentencing a defendant more harshly because of his alien status violates the defendant's constitutional right to due process. See United States v. Onwuemene, 933 F.2d 650, 651 (8th Cir. 1991); United States v. Borrero-Isaza, 887 F.2d 1349, 1352 (9th Cir. 1989); United States v. Gomez, 797 F.2d 417, 419 (7th Cir. 1986). Additionally, the Sentencing Guidelines unequivocally state that national origin is "not relevant in the determination of a sentence." U.S.S.G. § 5H1.10. When considering the court's remark in context, however, it is readily apparent the court did not focus on Defendant's alien status, but rather on Defendant's conduct of entering the United States illegally.

Entering the United States illegally is a federal crime. See 8 U.S.C. § 1325. A sentencing court is at liberty to consider such prior criminal conduct when sentencing a defendant for a different and unrelated crime. See 18 U.S. C. § 3553(a)(1) (permitting a court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant"); U.S.S.G. § 4A1.3(a)(2)(E) (permitting a court to consider "similar prior adult criminal conduct not resulting in conviction"). The act of illegally entering the United States "is no different than any other recent prior illegal act of any defendant being sentenced for any offense. . . . [T]he illegal act of an alien is entitled to no more deference than some other prior illegal act of a citizen also being

7

sentenced for a drug violation." <u>Gomez</u>, 797 F.2d at 420.  The court did not violate

Defendant's due process rights.

AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge