FILED
United States Court of Appeals
Tenth Circuit

November 14, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ENI OYEGOKE-ENIOLA,

      Defendant - Appellant.

No. 12-3314

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 6:12-CR-10057-MLB-1)**

---

Stephen K. Christiansen (Kelley M. Marsden, with him on the briefs), Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for Defendant – Appellant.

James A. Brown, Assistant United States Attorney, (Barry R. Grissom, United States Attorney, with him on the brief), District of Kansas, Topeka, Kansas, for Plaintiff – Appellee.

---

Before **HARTZ, BALDOCK,** and **EBEL,** Circuit Judges.

---

**HARTZ,** Circuit Judge.

---

Defendant Eni Oyegoke-Eniola challenges his sentence following his guilty plea to charges of mail fraud, *see* 18 U.S.C. § 1341, and making a false statement on an immigration document, *see id.* § 1546. Defendant asserts four errors: (1) that the district court improperly imposed enhancements under the Sentencing Guidelines; (2) that Defendant's statements made under an immunity agreement should have been stricken from the Presentence Investigation Report (PSR); (3) that the court imposed a substantively unreasonable sentence; and (4) that the court failed to rule on some of Defendant's objections to the PSR. We have jurisdiction under 28 U.S.C. § 1291. We hold that Defendant's first claim is meritorious with respect to two enhancements and we therefore vacate the sentence and remand for further proceedings. We also discuss the use of the statements made by Defendant under an immunity agreement because the issue will arise again on remand. We need not address Defendant's other claims, which may be mooted at resentencing.

We discuss Defendant's first two issues in turn, setting forth the facts necessary to resolve each.

I.      **GUIDELINES ENHANCEMENTS**

We vacate Defendant's sentence because the district court's calculation of his total offense level improperly included two enhancements. The prosecution conceded that there was no evidence to support one of the enhancements, and the court declined to make the finding necessary for the other.

## A.    Background

After Defendant pleaded guilty, the probation office prepared a PSR. Unchallenged portions of the PSR set forth the following:  Defendant is a citizen of Nigeria who had resided in Great Britain before coming to this country.  In Great Britain he had been convicted of several felonies involving fraud and deception.  He entered the United States in 2009 on a visa by falsely stating in his visa application that he had not been convicted of a crime.  In 2011 he submitted an application for status as a permanent resident, again falsely answering that he had no criminal convictions.  The 2011 false statement was the basis for his conviction under 18 U.S.C. § 1546.  Defendant's mail-fraud conviction under 18 U.S.C. § 1341 was based on his use of the mails to engage in an identity-theft scheme.  He would purchase merchandise with credit cards issued to other persons and have the merchandise delivered to him.

To calculate Defendant's total offense level, the PSR began with a base offense level of 7 under USSG § 2B1.1(a)(1) (the guideline for theft, fraud, and similar crimes).  It then added four enhancements:  (1) a 2-level increase because Defendant possessed five or more stolen-identity documents, *see id.* § 2B1.1(b)(11)(C)(ii); (2) a 2-level increase because Defendant's offense used sophisticated means, *see id.* § 2B1.1(b)(10)(C); (3) an 8-level increase because the intended loss was between $70,000 and $120,000, *see id.* § 2B1.1(b)(1)(E); and (4) a 2-level increase because there were 10 or more victims, *see id.* § 2B1.1(b)(2)(A)(i).  The PSR then reduced the offense level by 3 because Defendant accepted responsibility and assisted authorities, *see id.* § 3E1.1, leading to a total offense

3

level of 18.  He had no criminal-history points (the convictions abroad did not count), so the PSR gave him a criminal-history category of I.  The resulting guideline sentencing range was 27 to 33 months' incarceration.  The PSR also suggested that Defendant be ordered to pay $9,480 as restitution to the company he had defrauded.

Defendant filed objections to the recommended enhancements.  The government responded that it lacked evidence that he possessed five or more stolen-identity documents and it would not seek that enhancement.  The district court then wrote the parties a letter stating that "it would appear that defendant's recalculated guideline sentence is 21-27 months," R., Vol. I at 87, which is the sentencing range that would result from eliminating the enhancement, *see* USSG ch. 5, pt. A.

At the sentencing hearing, the government called a Secret Service agent to testify about the sophisticated means employed by Defendant.  After the agent's testimony, the district court expressed doubt about its sufficiency.  The court said:

> [I]f the agent had had more evidence about how you are able to access the [credit card] account and get out information that was not automatically reported immediately and that he did it, that Defendant did it, then I would say that's sophisticated based on my knowledge of those things, but . . . I didn't hear that.

R., Vol. III at 61.  In response the government said that Defendant's conduct went beyond ordinary credit-card fraud where an individual steals a card from the mail or from a billfold, because he went so far as to buy information regarding legitimate credit cards and then changed billing addresses.  It also argued that Defendant employed sophisticated means when he used fictitious company names to hide his assets.  Defense counsel

countered that the evidence of fictitious names was unrelated to the offense of conviction and could not support enhancement of Defendant's sentence.

The court concluded that it would not impose the enhancement:

> So I'm not going to make a finding one way or another about whether there was sophisticated means. It certainly seems to me that whether it would meet the definition of the guidelines, which I, of course, give respectful consideration to at all times, his conduct does seem to demonstrate more knowledge about how computers and particularly billing type situations operate. But that is consistent, as I understand it, with the education that he received in England. So if that was a basis for the sophisticated enhancement, yeah, but the guidelines don't talk about that, so I don't think it's necessary.

*Id.* at 70–71.

The court announced that it was incorporating by reference its earlier correspondence (specifically including its letter rejecting the enhancement for multiple stolen-identity documents) and that it would not make a finding on the use of sophisticated means. It then proceeded to explain how it proposed to sentence Defendant. It discussed at length Defendant's history of fraudulent conduct and its view that an upward variance from the guidelines would be necessary to impose an appropriate sentence that would deter him and protect the public. After this explanation the court offered Defendant an opportunity to raise objections. None were forthcoming.

The court then stated, "The Court determines that the presentence investigation and the previously stated findings in the presentence report are accurate and orders them to be incorporated into the following sentence." *Id.* at 76. The court imposed a 60-month sentence and ordered $9,480 in restitution. Other than the reference to the PSR, it did not

specify the offense level or guideline range used in reaching this sentence. The court concluded the hearing by asking Defendant if he had questions (he had none) or wanted to say something (he did not).

Eleven days after the hearing the district court filed its amended Statement of Reasons to accompany the judgment. On the document the court had checked off the box stating, "The court adopts the presentence investigation report without change." *Id.*, Vol. II at 75. Also, in the section reciting the court's determination of the advisory guideline range, the court had typed in the total offense level as "18," *id.*, which was the level calculated by the PSR after including the enhancements for the use of sophisticated means and possession of five or more stolen-identity documents, and it had typed in a sentencing range of 27 to 33 months, which was what the PSR had calculated.

## B. Discussion

### 1. Standard of Review

We first address our standard of review. The government argues that we should review only for plain error because Defendant did not object at the sentencing hearing to the district court's imposition of enhancements for the use of sophisticated means and possession of multiple stolen-identity documents. But there is no need to raise an objection when the court agrees with you. Defendant had no reason to argue that there was insufficient evidence of sophisticated means when the court said that it would not make a finding on the enhancement. And there was certainly no reason to say anything about the possession of stolen-identity documents when the court had sent a letter

6

adopting the Defendant's view. Fed. R. Crim. P. 51 is in point. It provides: "If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Fed. R. Crim. P. 51(b). For example, if the first time that the sentencing court announces a condition of release is in its written judgment, the failure of counsel to object at the sentencing hearing does not require plain-error review of a challenge to the condition. *See United States v. Mike*, 632 F.3d 686, 693 (10th Cir. 2011).

We recognize that before pronouncing sentence the district court stated: "The Court determines that the presentence investigation and the previously stated findings in the presentence report are accurate and orders them to be incorporated into the following sentence." R., Vol. III at 76. Ordinarily, an attorney who had any objection to the PSR would need to raise the objection at that time (if not raised earlier) to preserve it for appeal. But the context here was not ordinary. What had occurred immediately before this statement would signal to those present that the statement was not intended to alter any of what the court had said previously. The court had made a lengthy statement (it occupies six pages of the transcript) summarizing its rulings on the parties' arguments and explaining why it thought that an upward variance from the guideline sentencing range was necessary. After making that statement, the court asked for objections. Defense counsel said that he had none. It was quite reasonable for defense counsel to assume that this request for objections was not just a feint by the court and that it would not now proceed to renege on its rulings of a few moments earlier. Of course, it would

7

have been better if defense counsel had clarified the court's intention. But we cannot fault him for letting pass an apparently inconsequential slip. He properly could have thought (and apparently did think) that the court was adopting only the parts of the PSR that it had not just rejected. It would be hard to believe that the court was directly contradicting what it had pronounced only moments before, without any explanation of why it had changed its mind. Thus, we apply abuse-of-discretion review.

Under that standard, the district court erred in its Statement of Reasons when it adopted the PSR and calculated the total offense level as 18. As the government concedes on appeal, there was no factual support for the enhancement for possession of five or more stolen-identity documents, and the court did not make the findings necessary to impose the sophisticated-means enhancement.

Moreover, the error was not harmless. We have held that "unless the district court indicated at sentencing that the sentence imposed would be the same under multiple sentencing approaches, one of which was the correct approach, we are compelled to remand for resentencing when we find that an improper offense level or criminal history category was applied." *United States v. Kieffer*, 681 F.3d 1143, 1169 (10th Cir. 2012) (ellipsis, brackets, and internal quotation marks omitted). The district court gave no such indication. Bound by this precedent, we must reverse.

Because we must remand for resentencing anyway, we need not address Defendant's arguments that the sentence was substantively unreasonable and that the district court failed to rule on his other objections to the PSR. We add, however, that the

court should clarify on remand whether it not only varied from the guideline range but also departed from Defendant's criminal-history classification, a matter on which the parties disagree.

## II. IMMUNITY AGREEMENT

There is, however, an additional matter that we should address because it will arise on resentencing. It concerns the use in the PSR of Defendant's statements to federal agents.

The government cannot compel a person to testify over his invocation of the privilege against self-incrimination unless it promises to immunize him against use of the testimony in any criminal prosecution against him. *See Kastigar v. United States*, 406 U.S. 441, 459–62 (1972). Such use includes use in sentencing proceedings. *See Mitchell v. United States*, 526 U.S. 314, 326–27 (1999). But absent compulsion, the government and the person can enter into a contract providing for whatever scope of immunity they agree to, and set conditions on the grant of immunity. *See United States v. Fountain*, 776 F.2d 878, 884 (10th Cir. 1985); *United States v. Hembree*, 754 F.2d 314, 317 (10th Cir. 1985) (immunity agreement breached by giving false testimony); 3 Wayne R. LaFave et al., Criminal Procedure § 8.11(e), at 296 (3d ed. 1999) ("For informal immunity, unlike statutory use/derivative-use immunity, issues relating to the scope of the immunity cannot be answered by reference to the commensurate protection provided under the self-incrimination privilege. Here, scope may be broader or narrower than what would be

9

required to supplant the privilege, and the crucial question is what scope was agreed to by the parties.").

It is undisputed that when Defendant was interviewed after his arrest, defense counsel orally agreed with the prosecutor that Defendant would later receive a "standard Kastigar" letter. R., Vol. I at 72 (internal quotation marks omitted). The letter delivered after the interview provided that "no statements made by or other information provided by your client during the proffer or discussion will be used against him in the government's case-in-chief." *Id.* at 58.

The PSR included information from the interview. Defendant moved to strike this information from the PSR. Although he did not argue that the prosecutor's *Kastigar* letter departed from the terms of standard *Kastigar* letters used by the United States attorney's office in that district, he contended that the bar against use of the statements in the government's case-in-chief encompassed use at sentencing. The court disagreed and denied the motion to strike. We agree with the district court's interpretation of the letter.

The term *case-in-chief* does not encompass sentencing. Black's Law Dictionary defines it as "1. The evidence presented at trial by a party between the time the party calls the first witness and the time the party rests. 2. The part of a trial in which a party presents evidence to support the claim or defense." Black's Law Dictionary 244 (9th ed. 2009). We have been pointed to no use of the term that extends to sentencing. And we note that *Kastigar* agreements quoted in appellate decisions distinguish between the case-in-chief and sentencing. *See, e.g.*, *United States v. Bennett*, 708 F.3d 879, 883–84 (7th

10

Cir. 2013) ("[N]o direct use will be made of his statements, or any information provided by him, in the government's case-in-chief at trial, or in aggravation of his sentence . . . ." (internal quotation marks omitted)); *United States v. Al-Esawi*, 560 F.3d 888, 892 (8th Cir. 2009) ("[T]he government will not offer in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining the applicable guideline range, any oral statements made by you at the meeting . . . ." (internal quotation marks omitted)).

Nevertheless, use of the Defendant's interview is problematic even if the government's interpretation of the *Kastigar* letter is correct. USSG § 1B1.8(a) states:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

Applying that provision in *United States v. Fortier*, 180 F.3d 1217, 1224 (10th Cir. 1999), we held: "The language and spirit of section 1B1.8 require the agreement to specifically mention the court's ability to consider the defendant's disclosures in calculating the appropriate sentence range." The *Kastigar* letter here contains no such specific mention. An Application Note states that "[a]lthough the guideline itself affects only the determination of the guideline range, the policy of the Commission, as a corollary, is that information prohibited from being used to determine the applicable guideline range shall not be used to depart upward." USSG § 1B1.8, cmt. n.1. On the

11

other hand, neither the guidelines nor our cases address the use of immunized statements to *vary* upwards, and at least one court has suggested that § 1B1.8(a) does not apply to variances. *See United States v. Patel*, 457 F. App'x 549, 551 (6th Cir. 2012).

We leave to the district court in the first instance whether it can (or wishes to) use Defendant's statements for sentencing purposes. The court should, however, make a record of whether it is doing so.

## III. CONCLUSION

We VACATE Defendant's sentence and REMAND for resentencing.