**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 11, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ENI OYEGOKE-ENIOLA,

Defendant – Appellant.

No. 14-3202
(D.C. Nos. 6:14-CV-01180-MLB and
6:12-CR-10057-MLB)
(D. Kan.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

Eni Oyegoke-Eniola, proceeding pro se, seeks a certificate of appealability

("COA") to appeal the district court's denial of his 28 U.S.C. § 2255 habeas motion. We

deny a COA and dismiss the appeal.

**I**

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Oyegoke-Eniola, a Nigerian citizen, earned a Bachelor of Science degree in Computer Engineering in Nigeria in 2001. He then moved to Great Britain, where he pursued graduate study in Information Security and, later, a PhD in Intrusion Detection and Network Security. He did not complete his PhD because a British court convicted him in 2007 of offenses involving credit card fraud and deception. After returning to Nigeria, he came to the United States in 2009 on a non-immigrant visa to pursue an MBA at Washington University in St. Louis. When he applied for his 2009 visa, he denied having been arrested for, or convicted of, any crime.

During his MBA program, Oyegoke-Eniola began spending time in Wichita, Kansas, where he eventually sublet an apartment. Oyegoke-Eniola and others in Wichita, including his friend Hakeem Makanjuola, engaged in identity theft, credit card fraud, and other fraudulent activities. On June 28, 2011, United States Secret Service Special Agent Greg Tiano learned about the fraud, and on July 21, 2011, Tiano observed Oyegoke-Eniola picking up a package at his sublet apartment that Tiano believed contained fraudulently-purchased gold coins. Tiano arrested Oyegoke-Eniola, briefly interviewed him, and then, with Oyegoke-Eniola's consent, searched his sublet apartment as well as a different apartment where Oyegoke-Eniola lived with his fiancée. Oyegoke-Eniola was later interviewed at a Secret Service office, and confirmed that he had bought gold coins and gift cards from Makanjuola, sold gold coins on Makanjuola's behalf, and received various packages.

Oyegoke-Eniola was released without being charged.  On August 11, 2011, the government sent Oyegoke-Eniola's attorney a letter promising that his statements during a later proffer interview would not be used against him in the government's case-in-chief.  Later that month, after marrying his fiancée, Oyegoke-Eniola prepared, signed under penalty of perjury, and submitted an I-485 Application to Register Permanent Residence or Status.  In the portion of the form asking about his prior criminal conduct, Oyegoke-Eniola stated that he was "arrested but not charge[d]" and "released after be[ing] interviewed about some set of people I came in contact with while living in Wichita, KS."  He again failed to mention his overseas convictions.  On August 31, 2011, Oyegoke-Eniola was interviewed again by Tiano and another agent, subject to the immunization agreement.

Oyegoke-Eniola was accepted into an LLM program, to begin in the summer of 2012, but never matriculated, because on March 1, 2012, a federal grand jury indicted him.  He was arrested the same day and has been in custody ever since.  On June 14, 2012, he pled guilty to one count of providing a false statement in an immigration document in violation of 18 U.S.C. § 1546, and one count of aiding and abetting mail fraud in violation of 18 U.S.C. § 1341.  In his plea agreement, he waived the right to appeal or collaterally attack his sentence.  Oyegoke-Eniola was sentenced to 60 months in prison.  On appeal, this court vacated his sentence and remanded for resentencing, because the district court abused its discretion by improperly applying two sentencing enhancements.  United States v. Oyegoke-Eniola, 734 F.3d 1262, 1264, 1266-67 (10th

Cir. 2013). We also addressed Oyegoke-Eniola's claim that the district court improperly relied upon his immunized statements, and instructed the district court on remand to make a record of whether it could, or wished to, use those statements for sentencing purposes. Id. at 1268.

On remand, the district court determined that Oyegoke-Eniola's correct sentencing range was either 15-21 months or 18-24 months. It sentenced Oyegoke-Eniola to time served, which was at that point just over 25 months, and to three years supervised release.[1] The district court adopted the Amended Presentence Investigation Report "without change" and also imposed several special conditions of supervision, including that "upon completion of the term of imprisonment, the defendant is to be surrendered to a duly authorized immigration official for deportation."

Oyegoke-Eniola did not appeal from his re-sentencing. He moved for habeas corpus relief under § 2255 on June 17, 2014. On September 10, 2014, the district court denied Oyegoke-Eniola's motion. He timely appealed.

**II**

Oyegoke-Eniola may not appeal the denial of § 2255 relief without a COA. 28 U.S.C. § 2253(c)(1)(B). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy this

---

[1] Although Oyegoke-Eniola is no longer incarcerated for the crimes at issue, he may nonetheless maintain a § 2255 claim because his term of supervised release has yet to expire. United States v. Cervini, 379 F.3d 987, 989 n.1 (10th Cir. 2004).

standard, Oyegoke-Eniola must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotations omitted). Because Oyegoke-Eniola proceeds pro se, we construe his filings liberally. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).[2]

As a threshold matter, Oyegoke-Eniola cannot collaterally attack his sentence unless he can avoid the waiver of collateral review contained in his plea agreement. Oyegoke-Eniola contends that enforcing the waiver would constitute a "miscarriage of justice." United States v. Hahn, 359 F.3d 1315, 1327 (10th Cir. 2004) (en banc) (per curiam); see also United States v. Pinson, 584 F.3d 972, 975 (10th Cir. 2009) (holding that Hahn applies to waivers of collateral review). A miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." Hahn, 359 F.3d at 1327. Oyegoke-Eniola bears the

---

[2] Despite the district court's implication to the contrary, Oyegoke-Eniola's educational credentials do not justify construing his filings otherwise. Cf. Diversey v. Schmidly, 738 F.3d 1196, 1198-99 (10th Cir. 2013) (liberally construing the filings of a pro se litigant who was a Ph.D. candidate). Although we may decline to construe the pro se pleadings of a licensed attorney liberally, Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001), Oyegoke-Eniola is not a licensed attorney, and never entered the LLM program to which he was admitted.

burden of showing that enforcement of the waiver would result in a miscarriage of justice. United States v. Ochoa-Colchado, 521 F.3d 1292, 1299 (10th Cir. 2008).

## A

On appeal, Oyegoke-Eniola first argues that the waiver merits an exception under the fourth, "otherwise unlawful" prong of Hahn's miscarriage-of-justice test. He contends that his conviction is invalid because he did not sign the I-485 form under oath and because his statement on the I-485 was not false, but rather literally true without being fully responsive to the question asked. Oyegoke-Eniola also argues that his sentence was impermissibly based on immunized statements.

These arguments misapprehend the "otherwise unlawful" exception, which "looks to whether the waiver is otherwise unlawful, not to whether another aspect of the proceeding may have involved legal error." United States v. Smith, 500 F.3d 1206, 1212-13 (10th Cir. 2007) (quotation omitted). Oyegoke-Eniola offers no reason to believe that the waiver itself was unlawful, nor does he contend that it constituted "error seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings." Id. at 1212. Instead, he argues that the substance of his sentence was inadequately supported. "An appeal waiver is not 'unlawful' merely because the claimed error would, in the absence of waiver, be appealable. To so hold would make a waiver an empty gesture." United States v. Sandoval, 477 F.3d 1204, 1208 (10th Cir. 2007).

## B

-6-

Oyegoke-Eniola also argues that his appellate waiver is subject to the first, "impermissible factor" prong of the <u>Hahn</u> miscarriage-of-justice test because the district court relied on his noncitizen status in imposing his sentence. Our opinion in <u>Hahn</u> held that it is a miscarriage of justice for a sentencing judge to rely "on an impermissible factor such as race." 359 F.3d at 1327. We have not provided a complete list of factors that are considered impermissible. In one case, we concluded that gender was an impermissible factor. <u>United States v. Johnson</u>, 756 F.3d 1218, 1219-20 (10th Cir. 2014). And our unpublished cases provide examples of what our practice has been. <u>See, e.g.</u>, <u>United States v. Bell</u>, 437 F. App'x 658, 663 (10th Cir. 2011) (unpublished) (considering race to be an impermissible factor); <u>United States v. Kuhn</u>, 554 F. App'x 719, 721 (10th Cir. 2014) (unpublished) (concluding that "garden variety sentencing objections" are not impermissible factors).

Alienage is widely regarded as an impermissible factor at sentencing among our sibling circuits. In <u>United States v. Onwuemene</u>, 933 F.2d 650 (8th Cir. 1991), the Eighth Circuit reviewed a district court sentence that referenced the defendant's alien status as follows:

> The other thing that I feel that warrants imposition at the high end of the guideline range: You are not a citizen of this country. This country was good enough to allow you to come in here and to confer upon you . . . a number of the benefits of this society, form of government, and its opportunities, and you repay that kindness by committing a crime like this. We have got enough criminals in the United States without importing any.

Id. at 651. The Eighth Circuit vacated and remanded, concluding that imposing a harsher sentence based on the defendant's alienage would be unconstitutional. Id. at 651-52; see also United States v. Trujillo-Castillon, 692 F.3d 575, 579-80 (7th Cir. 2012) (vacating sentence that may have relied on Cuban-immigrant defendant's national origin); United States v. Borrero-Isaza, 887 F.2d 1349, 1356-57 (9th Cir. 1989) (vacating alien's sentence that impermissibly relied on his national origin).[3] Although we have not published opinions in the field, our non-precedential practice has been to the same effect. For example, in United States v. Garcia-Cardenas, 242 F. App'x 579 (10th Cir. 2007) (unpublished), we concluded that "[s]entencing a defendant more harshly because of his alien status violates the defendant's constitutional right to due process." Id. at 583. Accordingly, we will assume that for the purpose of the first prong of Hahn's miscarriage-of-justice test, the district court was not permitted to penalize Oyegoke-Eniola based on his alienage.

Oyegoke-Eniola did not object to any of the district court's statements during his sentencing hearing. When a defendant fails to object to a district court's discussion of an allegedly impermissible factor during sentencing, we review for plain error. Johnson, 756 F.3d at 1220. "Plain error occurs when there is (1) error, (2) that is plain, which (3)

_____

[3] Although these cases involve direct challenges to sentencing rather than challenges to a waiver of appeal, courts have also refused to enforce appellate waivers for sentences based on alienage or national origin. See, e.g., United States v. Gonzalez, 76 F. App'x 386, 388 (2d Cir. 2003) (unpublished) ("[W]e have declined to find waiver of the right to appeal a sentence that was imposed based on constitutionally impermissible factors, such as national origin bias.").

affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Nickl, 427 F.3d 1286, 1298 (10th Cir. 2005) (quotations omitted).

Whether the district court impermissibly relied on Oyegoke-Eniola's alienage in determining his sentence, and thereby committed error, is debatable. The district court stated: "I have seen all kinds of people come through this court from foreign countries . . . [b]ut I haven't had anybody . . . that has your level of education, your level of intelligence, and your level of essentially living your life making – by making – committing crimes." This remark suggests that the district court compared Oyegoke-Eniola's crimes to those of other foreign-born defendants, and it is debatable that the district court may have relied on this comparison in determining Oyegoke-Eniola's sentence. The court also told him that "[o]f all the people who come to the United States legally and want to better themselves and get into good schools, you certainly didn't deserve any of that. So I'm going to do everything I can to get you out of the United States permanently. Do you understand that?" Given the comparison of Oyegoke-Eniola to other immigrants, it is debatable that this statement could imply that Oyegoke-Eniola's sentence might have been impermissibly based on his alienage.

However, the district court's comments did not affect Oyegoke-Eniola's substantive rights. He was sentenced to time served, and his term of three years of supervised release was within the range specified by the Guidelines. Although the special condition that Oyegoke-Eniola must be surrendered to immigration officials upon

completion of his term of imprisonment might appear to affect his substantive rights, such a condition is not unusual. For example, in one unpublished opinion, we affirmed the sentence of a defendant who, like Oyegoke-Eniola, was sentenced to approximately time served, after which he was to be put in custody pending removal proceedings. See, e.g., United States v. Sun, 354 F. App'x 295, 301, 306 (10th Cir. 2009) (unpublished). Moreover, Immigration and Customs Enforcement filed a detainer on Oyegoke-Eniola prior to his resentencing hearing. Because the district court's mention of impermissible factors did not constitute plain error, the appellate waiver is enforceable. Cf. United States v. Salama, 974 F.2d 520, 522 (4th Cir. 1992) (upholding sentencing of a noncitizen defendant despite judge's remarks referencing his noncitizen status and observing that "[w]hile we do not approve of the irrelevant remarks introduced by the sentencing judge into the proceedings—indeed, we consider them to be inappropriate—we conclude that they did not in this case become an improper factor in sentencing and were therefore harmless error").

### III

For the foregoing reasons, we **DENY** a COA and **DISMISS** the appeal. We **GRANT** Oyegoke-Eniola's motion for leave to proceed in forma pauperis.

Entered for the Court


Carlos F. Lucero
Circuit Judge


-10-