Raymond CATALA FONFRIAS, Petitioner, Appellant,

v.

UNITED STATES of America, Respondent, Appellee.

No. 91–1285.

United States Court of Appeals, First Circuit.

Submitted Aug. 1, 1991.

Decided Dec. 10, 1991.

---

Raymond Catala Fonfrias, on brief, pro se.

Daniel F. Lopez Romo, U.S. Atty., and Carlos A. Perez, Asst. U.S. Atty., on brief for respondent, appellee.

Before CAMPBELL, TORRUELLA and CYR, Circuit Judges.

PER CURIAM.

In 1980 appellant Raymond Catala Fonfrias, then an attorney in Puerto Rico, took part in a scheme that led to the murder of a witness who was about to testify against Catala's client at a criminal trial in a Puerto Rico court. A federal district court jury found that Catala had violated both 18 U.S.C. § 241 (which prohibits conspiracies to deprive civil rights) and 18 U.S.C. § 242 (which prohibits actual deprivations of civil rights), and the district court sentenced him to concurrent life sentences. *See United States v. Lebron–Gonzalez*, 816 F.2d 823 (1st Cir.1987) (affirming convictions on direct appeal). Catala then filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The district court dismissed the motion, and this appeal followed. Catala argues that the imposition of life sentences for both convictions violated his right to be protected from double jeopardy because, under the circumstances of this case, the conspiracy and substantive crimes constituted the "same offense." *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (double jeopardy clause violated by "multiple punishments for the same offense"). We affirm the district court's decision for the reasons stated below.

I

Catala's theory, and its inutility, can best be understood if one examines first the text of the statutes at issue, as they read before Congress amended them in 1968.

Until 1968, 18 U.S.C. § 241 stated:

If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

Until 1968, 18 U.S.C. § 242 said:

Whoever, under color of any law, statute, ordinance, regulation or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

It is clear beyond reasonable dispute that, until 1968, Congress intended Section 241 and Section 242 to define separate offenses which could be separately punished. Section 241 prohibited *conspiracies* to deprive another person of his civil rights, while Section 242 proscribed the actual *deprivation* of the civil rights of another person. "It has been long and consistently recognized," the Supreme Court wrote in 1946, "that the commission of the substantive offense [i.e., the violation of Section 242] and a conspiracy to commit it [i.e., the violation of Section 241] are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established.... [T]he plea of double jeopardy is no defense to a conviction for both offenses." *Pinkerton v. United States*, 328 U.S. 640, 643, 66 S.Ct. 1180, 1181, 90 L.Ed. 1489 (1946).

## II

In 1968, Congress amended both Section 241 and Section 242. The amendments left the basic elements of both offenses untouched, but added clauses to their punishment provisions that said: "and if death results, [the perpetrators] shall be subject to imprisonment for any term of years or for life." Catala was sentenced to concurrent life terms on the authority of these amended punishment provisions; his double jeopardy challenge hinges on his interpretation of the effect the amendments had on the statutory scheme.

We understand Catala to say that, after the 1968 amendment, Section 241 and Section 242 each described *two* crimes. Section 241 continued to proscribe conspiracies to violate the civil rights of others, but the amendment created a second, "death resulting" crime with the following elements: (1) a conspiracy to violate civil rights, and (2) an actual deprivation of civil rights that (3) causes the victim's death. (The new offense required the second element, Catala reasons, because death cannot result from a mere conspiracy to deprive another person of her civil rights; death can result only if the defendant also commits a substantive offense.) Similarly, Section 242 continued to proscribe deprivations of civil rights, but the amendment created a second, related crime with these elements: (1) a deprivation of civil rights that (2) causes the victim's death.

According to Catala, the new "death resulting" crimes created by the 1968 amendments to Sections 241 and 242 constitute the "same offense" for double jeopardy purposes, so that the courts cannot punish a defendant for committing both crimes through a single course of conduct. Catala points to the Supreme Court decision in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to show that the two crimes are fatally identical. *Blockburger* said that "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. A violation of the new "death resulting" crime proscribed by Section 242, Catala argues, does not require proof of any fact which is not required to show a violation of the "death resulting" crime proscribed by Section 241. The former requires proof of a civil rights violation and a resulting death, while the latter requires proof of a conspiracy, a civil rights violation and a resulting death.

## III

■ Catala's argument is flawed, however, by his insistence on a rigid and dispositive application of the *Blockburger* test. The double jeopardy clause, in the area of "multiple punishments for the same

offense," merely prohibits a sentencing court from imposing a stiffer punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). If Congress *intended* to impose multiple punishments, then cumulative convictions and sentences do not violate the Constitution. *See Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981). Thus, while it is true that the Supreme Court "has consistently relied on [the *Blockburger* test] to determine whether Congress intended the same conduct to be punishable under two criminal provisions," *Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985), the Court has also "indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 2411–12, 85 L.Ed.2d 764 (1985).

The District of Columbia Circuit has discerned a "multi-step analytical process" for deciding whether Congress or another legislature "meant to authorize cumulative punishments for conduct infringing two or more separate statutory provisions." *United States v. Coachman*, 727 F.2d 1293, 1298–99 (D.C.Cir.1984). The process ends rather than begins with the *Blockburger* test:

> ... The court should first resort to the language of each provision for possible explanation of how the punishments it prescribes relate to those authorized by the other. If the provisions are silent or ambiguous on the interaction of punishments, the court should explore the legislative history of each section for legislative intent respecting multiple punishments. Should the legislative design remain obscure, the court should then invoke the judicially-fashioned *Blockburger* standard in a continuing effort to ascertain the legislative will....

*Id.* at 727 F.2d 1299.

■ In this case, we begin with the unassailable proposition that, until 1968, Congress intended Sections 241 and 242 to describe different crimes. A defendant who violated both statutes could be punished cumulatively for two crimes. Nothing in the language, structure or legislative history of the two statutes at issue suggests that Congress, by making the 1968 amendments, meant to disrupt that arrangement. The structure of the amended statutes certainly lends no support to Catala's interpretation: if Congress had intended to create a single "death resulting" crime, it could easily, and would naturally, have done so *separately*, by enacting a new statute (as it did in 1968 by enacting a new law, 18 U.S.C. § 245, to prohibit interference with several enumerated "federally protected activities").

The natural reading of the text, given the placement of the "death resulting" language within the sentencing provisions of both statutes, is that Congress intended to add "death resulting" as a factor that would justify an enhanced sentence. In other words, the victim's death is not an *element* of either offense, but simply an aggravating circumstance which gives the district court the authority to impose harsher punishment. This sentence enhancement provision may require the district court, when sentencing a defendant for violating Section 241 by committing a civil rights conspiracy with "death resulting," to consider his commission of another crime (that is, his substantive violation of Section 242), but that does not raise double jeopardy concerns. *See Sekou v. Blackburn*, 796 F.2d 108, 111–12 (5th Cir.1986) (consideration of other crimes at sentencing does not implicate double jeopardy clause because defendant is not actually being punished for crimes so considered). The basic elements of Sections 241 and 242 were undisturbed by the 1968 amendments. The crimes were, and remained, completely separable and separately punishable. Catala violated Section 241 when he conspired to deprive his victim of her civil rights. The injury (that is, the victim's death) affected the gravity of his crime and the scope of his punishment, but it neither affected nor was it required to establish his guilt.

The legislative history of the 1968 amendments fully supports this reading of the statutes. According to the Senate Report, Congress intended the amendments to Sections 241 and 242 to redress the "inadequate" maximum penalties then provided for by the two statutes. The amendments thus created "a graduated penalty structure," under which the "penalties prescribed ... are graduated in accordance with the seriousness of the results of the violations." S.Rep. No. 721, 90th Cong., 1st Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 1837, 1841. They did not create any new offenses or alter the relationship between the existing crimes.

## IV

■ We therefore see no need to apply the *Blockburger* test, since to do so would "convert[ ] what is essentially a factual inquiry as to legislative intent into a conclusive presumption of law." *Garrett v. United States*, 471 U.S. at 779, 105 S.Ct. at 2411–12. The language, structure and legislative history of the statutes at issue show "in the plainest way," *id.*, that Congress intended them to define discrete, and separately punishable, crimes—even when the result of the statutory violations is death. We will not apply a tool of statutory construction to frustrate Congress' plain intention. And, since Congress' intention was to punish the separate offenses cumulatively, Catala's two convictions and concurrent life sentences do not violate the double jeopardy clause.

*Affirmed.*