# United States Court of Appeals
## For the First Circuit

Nos. 12-1627
     12-2119
     12-2239

UNITED STATES OF AMERICA,
Appellee,

v.

JOSÉ VIZCARRONDO-CASANOVA, ERIK DÍAZ-COLÓN,
and CARLOS APONTE-SOBRADO,
Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Kayatta, Circuit Judges.

Steven A. Feldman, with whom Feldman and Feldman was on brief, for appellant José Vizcarrondo-Casanova.
Paul Camarena, with whom North & Sedgwick Law was on brief, for appellant Carlos Aponte-Sobrado.
Elaine Mittleman for appellant Erik Díaz-Colón.
José A. Contrera, Assistant United States Attorney, with whom John A. Mathews II, Assistant United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, and Rosa Emilia Rodriguez-Vélez, United States Attorney, were on brief, for appellee.

August 18, 2014

**KAYATTA, Circuit Judge**. Criminal defendants José Vizcarrondo-Casanova, Carlos Aponte-Sobrado, and Erik Díaz-Colón appeal from convictions related to the carjacking, robbery, and homicide of Elis Manuel Andrades-Tellería, a drug dealer and rival to Díaz-Colón. Vizcarrondo-Casanova argues that admission of evidence of his prior bad acts was impermissible under Federal Rules of Evidence 404(b) and 403. Aponte-Sobrado argues that the prosecutor improperly vouched for the truthfulness of the government's witnesses in his closing argument, and that the government lacked the authority to prosecute him. Díaz-Colón argues that three counts of his indictment were constructively amended, that the government improperly withdrew a plea offer made to him before trial, and that the jury rendered inconsistent verdicts on two counts. Though the district court's treatment of the Rule 403 issue, the government's closing argument, and the government's understanding of how certain statutes should be charged in an indictment were all less than ideal, we affirm all three defendants' convictions.

## I. Background

The defendants in this appeal were among twelve people charged in a single indictment in connection with the kidnapping, robbery, and death of Andrades-Tellería. The defendants, some of whom were Puerto Rico police officers, were accused of conspiring to pose as law enforcement officers carrying out their legitimate

duties in order to carjack, abduct, and rob Andrades-Tellería.  In May 2008, the defendants, some of whom were in a Puerto Rico Police Department vehicle, allegedly stopped Andrades-Tellería in his car, handcuffed him, read him his <u>Miranda</u> rights, and took approximately fourteen kilograms of cocaine from him.  According to cooperating government witnesses, they then took him and the car to an auto-body repair shop which was owned by another conspirator and closed for the day for this purpose.  Some conspirators then went to Andrades-Tellería's house where they stole money, watches, and a handgun.  Meanwhile, Andrades-Tellería was killed, and his body was dumped early the next morning on a "secluded rural road." Díaz-Colón, who was described at trial as the ringleader of the scheme, did not personally participate in the carjacking, abduction, or homicide.

All three defendants in this appeal were indicted for conspiracy to commit carjacking.  18 U.S.C. §§ 371, 2119.  All three defendants were also charged with conspiracy to "injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution," in violation of 18 U.S.C. § 241, and with depriving Andrades-Tellería of his rights under color of law in violation of 18 U.S.C. § 242.  Of the defendants in this appeal, only Aponte-Sobrado and Vizcarrondo-Casanova were also charged with carjacking itself.

At trial, the defendants were convicted on all counts described above. Vizcarrondo-Casanova was acquitted on an additional weapons count, and Aponte-Sobrado was acquitted on two weapons counts. The jury also found that Andrades-Tellería's death was "proximately, naturally, and foreseeably caused by" Vizcarrondo-Casanova and Aponte-Sobrado's violation of sections 241 and 242. However, with respect to Díaz-Colón, the jury found that Andrades-Tellería's death was caused by Díaz-Colón's violation of section 241, but not his violation of section 242. Each defendant was sentenced to life in prison. These appeals followed.[1]

## II. Discussion

### A. Vizcarrondo-Casanova's Rule 404(b) and 403 Arguments

The district court admitted a substantial amount of evidence concerning prior criminal conduct some of the defendants had committed together. The evidence, in summary, included the following: testimony by codefendant Osvaldo Hernández-Adorno that he and Vizcarrondo-Casanova planned a robbery together in which Vizcarrondo-Casanova and another person intended to impersonate FBI agents; testimony by codefendant Ricardo Herrera-Manino that he and Vizcarrondo-Casanova pretended to be police officers to intimidate someone who was stealing from Herrera-Manino's friend, tasered that person, and committed "many robberies" of other criminals;

---

[1] We attach as an addendum a chart reflecting the charges and verdicts against each respective appellant.

testimony by codefendant Romulo Bello-Negrón that he, Vizcarrondo-Casanova, and others, including other codefendants, attempted to rob an illegal gambling business while pretending to be police officers and, on another occasion, pretended to be police officers when robbing the driver of a car containing "[f]orty-odd" kilos of cocaine; and testimony by codefendant Noel Rosario-Colón, a Puerto Rico Police Department officer, that he and Vizcarrondo-Casanova committed "more than five" robberies in which they pretended to be police or FBI agents and took drugs or money.

Vizcarrondo-Casanova[2] argues on appeal, first, that Federal Rule of Evidence 404(b) precluded the admission of evidence of crimes that he had previously committed. He contends, second, that even if Rule 404(b) did not bar admission of the evidence, Federal Rule of Evidence 403 rendered the evidence inadmissible. Vizcarrondo-Casanova properly objected to this evidence before trial and also when some, but not all, of the evidence was introduced at trial. For the sake of argument we presume that his objection was preserved. Cf. United States v. Whitney, 524 F.3d 134, 140 (1st Cir. 2008) (noting that where a district court's ruling on an evidentiary issue in a motion in limine is not "final" an objection at trial is needed to preserve the issue for appeal but also that the argument failed even if preserved). We therefore

---

[2]	Each defendant also seeks to join his codefendants' arguments. Because we ultimately reject each argument, we need not consider whether these attempts are properly made.

-5-

address each of these claims of evidentiary error for abuse of discretion.  See, e.g., United States v. Mare, 668 F.3d 35, 38 (1st Cir. 2012).

Under Federal Rule of Evidence 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Rule 404(b)'s list of purposes for which evidence of prior bad acts is admissible is not exclusive.  We have previously held that evidence of prior crimes may also be admitted under 404(b) in a conspiracy case "to help the jury understand the basis for the co-conspirators' relationship of mutual trust."  United States v. Escobar-de Jesus, 187 F.3d 148, 169 (1st Cir. 1999).  It was on this basis that the district court admitted the evidence challenged by Vizcarrondo-Casanova.  That determination was not an abuse of discretion because, for the reasons we discuss below regarding the Rule 403 determination, in this particular case evidence that the defendants had a substantial basis to trust each other with their freedom and lives was certainly relevant to the plausibility of the coordinated conduct of which the prosecution accused them.

The Rule 403 question is closer because it asks not just whether the evidence was relevant for a proper purpose, but also whether its probative value was "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; see also United States v. Watson, 695 F.3d 159, 165 (1st Cir. 2012). Nevertheless, the "balancing act" called for by Rule 403 "'is a quintessentially fact-sensitive enterprise, and the trial judge is in the best position to make such factbound assessments.'" Watson, 695 F.3d at 165 (quoting Udemba v. Nicoli, 237 F.3d 8, 15-16 (1st Cir. 2001)). Therefore "'[o]nly rarely and in extraordinarily compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.'" Id. at 165-66 (alteration in original).

The quantity of evidence admitted here strikes us as cumulative. It also borders on overshooting the reach of the reasons given for its probative force, in that it includes more details of the prior crimes than were necessary to establish that the defendants had reason to trust one another. The district court's judgment to the contrary, however, is not so far beyond the pale as to constitute the type of "exceptional circumstance[]" that calls for reversal based on such an evidentiary ruling. United States v. Houle, 237 F.3d 71, 77 (1st Cir. 2001). That is so because this is an unusual case in which the crime as charged

required planning, coordination, and implementation by several corrupt law enforcement officers with several violent criminals. Opportunities for betrayal were rife, and ran in multiple directions. Were the cops really dirty? Were the crooks playing only for the home team? A powerful argument can be made that any particular defendant would not have knowingly participated in such a risky undertaking unless he had good reason to trust the reliability and competence of the others. In short, this is a case in which the existence and origins of trust among the conspirators is especially relevant.

Our decision in United States v. Varoudakis, 233 F.3d 113 (1st Cir. 2000), in which we held that the district court abused its discretion under Rule 403 by admitting evidence we held to be relevant under Rule 404(b), is not to the contrary. In Varoudakis, evidence of a prior crime served only to make more plausible a witness's claim that the defendant revealed to her a later crime. Id. at 120-21. In short, it bolstered credibility. Here, the probative thrust of the evidence of the prior crimes made more plausible the very notion that so many oppositionally employed people would and could coordinate their efforts to attempt the particular crime. Additionally, the record reveals in this case no obvious alternative to establish the existence of trust. In Varoudakis, by contrast, the government did not need evidence of the prior crime to demonstrate the existence of a relationship of trust because it had ample other means to demonstrate the same

thing, including the fact that the witness and the defendant had been in a romantic relationship for a decade and cohabited for six of those years.  Id. at 122-25.  Reaffirming without reservation our decision in Varoudakis, we nevertheless conclude that the admission of evidence of prior shared criminal conduct among groups of the defendants charged in this case is easily defensible and that admitting the quantity and type of that evidence admitted here fell within the outer reaches of the trial judge's broad Rule 403 discretion.

**B. Aponte-Sobrado's Arguments**

### 1. Vouching

Aponte-Sobrado argues that the prosecutor improperly vouched for the government's witnesses by saying that the inconsistencies in their statements showed that the government had not coached them about how to lie.  Vouching occurs when a prosecutor "places the prestige of her office behind the government's case by, say, imparting her personal belief in a witness's veracity or implying that the jury should credit the prosecution's evidence simply because the government can be trusted."  United States v. Pérez-Ruiz, 353 F.3d 1, 9 (1st Cir. 2003).  Aponte-Sobrado challenges the following statement made by the prosecutor in his rebuttal argument at the conclusion of the trial:

> And let me tell you something about all this to-do about
> inconsistent statements.  That actually shows they were

credible.  The Government could have put--they could have put all the cooperators in a room and say: Let's get this story straight.  Work it out.  You guys, all five of you, get in that room and you come out with a story that's consistent.  I don't want you leaving that room until the story's consistent so the jury knows you're telling the truth.

Of course, the Government knew that the versions were going to conflict.  Because that's life.  You know, you don't tell a story three years later and have the story miraculously just be the same story unless they've been influenced.  Unless, again, they've been put in a room to get their stories straight.  And you get in there, you tell the truth.  You get in there, you make sure you tell this fabricated story that we have planned.

Aponte-Sobrado failed to preserve his challenge to this statement because, though the defense did object to several prior statements in the prosecution's rebuttal argument on vouching grounds, causing the prosecutor to purport to withdraw them before the district court ruled,[3]  the defense made no objection to the

---

[3]  Those other statements were:

[Prosecutor:]  But let me tell you something else.  They know (indicating) if they do not tell the truth they're not going to jail for 30 years, they're going to jail for life.  Forever, no possibility of parole, do not collect $200.  Life.  That's not an incentive to lie, that's an incentive to tell the truth.  And every cooperator testified, even Alexis who's free on bond, said that.  Life.  Forever.  You miss one step on that witness stand, life.  You think the Government, these prosecutors, are going to file a motion for downward departure if --

[Defense Counsel]:  Objection, Your Honor.  He's vouching.  He's vouching.

[Prosecutor]:  I said "the Government," Your Honor.  I'll withdraw the comment "these prosecutors."  That comment's withdrawn.

Do you think the Government is going to file a motion for

subsequent statement he now challenges on appeal. Aponte-Sobrado argues that, while the defense did not object immediately, it did lodge an objection as soon as the government concluded its closing. Assuming (without deciding) that that objection was timely, even it did not challenge the specific statement at issue in this appeal. We therefore review Aponte-Sobrado's vouching argument for plain error. See, e.g., United States v. Landry, 631 F.3d 597, 606 (1st Cir. 2011). "To show plain error, a defendant must show that an error occurred, which was clear and obvious; and that it affected defendant's substantial rights and seriously impaired the fairness, integrity or public reputation of the public proceedings." United States v. Vázquez-Rivera, 407 F.3d 476, 480 (1st Cir. 2005).

"The line between the legitimate argument that a witness's testimony is credible and improper 'vouching' is often a hazy one, to be policed by the trial court in the first instance." United States v. Innamorati, 996 F.2d 456, 483 (1st Cir. 1993)

---

downward departure if there's a scintilla of evidence that these witnesses have not told the truth?  Have not testified --

[Defense Counsel]:  Your Honor, that's vouching.

[Prosecutor]:  I withdraw "not tell the truth."

Have not testified untruthfully?  [sic]  It's not going to happen.  It is not going to happen.

It is by no means clear that the prosecutor actually withdrew the aspects of his remarks to which objection was actually lodged, but in any event no argument to that effect was raised below or in the briefs on appeal.

-11-

(affirming, on plain error review, a conviction where the prosecutor's remarks fell into a "grey area"). For example, in Pérez-Ruiz we held on plain error review (describing previous cases to the contrary as dicta) that it was proper for the government to argue that "'[i]f [the witnesses] were all going to get up and make up a story, wouldn't it have been a better story?'" 353 F.3d at 9. Similarly, we have held to be proper a prosecutor's statement that "when you consider are these people making up stories, couldn't they have made up a better story? They've been in jail for four years . . . . They had all the time in the world, but that was not the case." Vázquez-Rivera, 407 F.3d at 483-84.

While the prosecutor unwisely put his toes up to the line, if there was error it was not "clear and obvious." Although one might read into the rebuttal here a suggestion that the government itself concluded that the stories were credible, it is far from clear that jurors would have inferred such a suggestion. Defense counsel also pretty much invited the rebuttal, pointing out inconsistencies in the witnesses' testimony, suggesting they showed that the witnesses were lying, and directly accusing the prosecution of being "kind of greedy" in bringing such testimony to the jury. On the whole, it was not clear that the rebuttal strayed too far beyond "a logical counter to the assertions of defense counsel, made in summation, that various government witnesses had fabricated their testimony." Pérez-Ruiz, 353 F.3d at 10.

We also doubt whether, even if the prosecutor's remarks were clearly and obviously improper, they "affected defendant's substantial rights and seriously impaired the fairness, integrity or public reputation of the public proceedings," another necessary element of a successful plain error argument. Vázquez-Rivera, 407 F.3d at 480. We have previously noted that "the potential for harm from vouching varies, and it is likely to be more dangerous where the prosecutor flaunts the government's skills and purity of motive or where the context or the prosecutor's words imply private knowledge of the defendant's guilt that unfortunately cannot be shared with the jury." United States v. Gomes, 642 F.3d 43, 47 (1st Cir. 2011). Here, there was no such "flaunt[ing]," no implication of secret knowledge, an instruction telling the jury that statements from closing arguments are not evidence, and no other circumstances which would lead us to find that the potential for harm from the prosecutor's comments was sufficient to justify reversal on plain error review.

**2. Authority to Prosecute**

In a supplemental pro se brief, Aponte-Sobrado claims that because "the FBI chose not to swear out a complaint in this case, government attorneys lacked authority under 28 U.S.C. § 547 to seek an indictment or prosecute on behalf of the 'United States'" and that a prosecution under such circumstances also violates the "Take Care" Clause of Article II, Section 3 of the

-13-

United States Constitution, and Federal Rules of Criminal Procedure 3 and 4.  The record contains no evidence about whether a criminal complaint was sworn in this case.  A complaint, however, is not a prerequisite to the initiation of a criminal prosecution:

> No complaint is needed . . . if a more formal determination of probable cause is made first.  If an indictment has been returned or an information filed prior to the arrest, a warrant may be issued on this ground alone pursuant to Rule 9.  In such a case, probable cause has already been established and there is no need for a complaint.

1 Charles Alan Wright et al, Federal Practice and Procedure § 41 (4th ed. 2014) (footnotes omitted).

## C. Díaz-Colón's Arguments

Díaz-Colón, through his attorney and in several pro se supplemental briefs, argues that: (1) his indictment was constructively amended because the jury instructions and verdict form, but not the indictment, specified that he was being charged with the "death resulting" form of the offenses described in sections 241 and 242; (2) his indictment was constructively amended on the conspiracy to commit carjacking count;  (3) the government improperly withdrew a plea offer it made to him before trial; and (4) the jury verdicts on two of his counts of conviction were inconsistent.

### 1. Constructive Amendment of the Deprivation of Rights Counts

Díaz-Colón first argues that the counts of his indictment charging him with violating 18 U.S.C. §§ 241 and 242 were

constructively amended.  Section 241 provides, in pertinent part, that:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; . . . They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, . . . they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

Section 242, similarly, provides, in pertinent part, that:

> Whoever, under color of any law . . . willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap . . . shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

It has been crystal clear for at least the last fourteen years that "'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)).  Such aggravating factors are "treated . . . like" elements of the aggravated

-15-

offense.  See Washington v. Recuenco, 548 U.S. 212, 214-221 (2006).

Section 241, therefore, effectively contains two separate offenses:

conspiracy against rights (with a maximum sentence of ten years),

and conspiracy against rights with at least one of several other

factors present, including that death resulted (with a maximum

penalty of death or life in prison).  Section 242, in turn,

contains three separate offenses: deprivation of rights (with a

maximum sentence of one year), deprivation of rights resulting in

bodily injury or involving "a dangerous weapon, explosives, or

fire" (with a maximum sentence of ten years), and deprivation of

rights with death resulting or involving one of several other

listed factors (with a maximum punishment of death or life in

prison).

Turning to the indictment, we look first to see which of

these various levels of the offense were charged.  Díaz-Colón's

indictment simply alleged, with respect to the section 241

conspiracy count, that he "did willfully conspire and agree . . .

to injure, oppress, threaten and intimidate [Andrades-Tellería] in

the free exercise and enjoyment of rights secured to him by the

Constitution and laws of the United States."  It then went on to

detail the "manner and means" of the conspiracy, but these details

did not include Andrades-Tellería's death.  With respect to the

section 242 count for the acts committed, the complaint alleged

that Díaz-Colón and the other defendants "acting under color of

laws . . . did wilfully deprive [Andrades-Tellería] of rights and

-16-

privileges secured and protected by the Constitution and law of the United States."

Accordingly, Díaz-Colón was indicted for only the base level offense under both statutes, and proof that the conspiracy or acts resulted in anyone's death was not necessary. At trial, the court nevertheless instructed the jury that if it concluded that any particular defendant violated section 241, it should then decide whether death resulted from that violation. The court also instructed the jury that to convict a defendant under section 242 it needed to find that he deprived Andrades-Tellería of his rights under color of law and caused him bodily injury. The court also instructed the jury that if it concluded that any particular defendant violated section 242, it should then decide whether death resulted from that violation. In sum, the indictment charged only the base level offense under both sections 241 and 242, but the court charged the jury that the section 242 count included as an element the causation of bodily injury, and that it should also separately determine whether death resulted from any violation it found of section 241 or 242.

When a defendant is indicted for one crime but the jury is then instructed that it may convict him of a crime requiring proof of an additional element, we call that change a "constructive amendment" of the indictment. See United States v. Brandao, 539 F.3d 44, 57 (1st Cir. 2008) ("A constructive amendment occurs when the charging terms of an indictment are altered, either literally

or in effect, by prosecution or court after the grand jury has last passed upon them." (internal quotation marks omitted)). Constructive amendments are forbidden so as "to preserve the defendant's Fifth Amendment right to indictment by grand jury, to prevent re-prosecution for the same offense in violation of the Sixth Amendment, and to protect the defendant's Sixth Amendment right to be informed of the charges against him." Id.

Because Díaz-Colón's indictment specified only the base level offense under sections 241 and 242, there can be no question that his indictment was constructively amended when the jury was instructed on the bodily injury and death resulting forms of the crime. See United States v. Lnu, 544 F.3d 361, 369 (1st Cir. 2008) ("In determining whether there has been constructive amendment of the indictment, we generally evaluate whether the defendant has demonstrated that 'the alleged alteration in the indictment did in fact change the elements of the offense charged . . . .'"). We are surprised, therefore, that the government suggests otherwise, citing Catala Fonfrias v. United States, 951 F.2d 423 (1st Cir. 1991), for the proposition that First Circuit "has addressed the construction of 18 U.S.C. § 242 and rejected the notion that there are three separate offenses within the statute." The government repeated this claim at oral argument, asserting that section 242 "charge[s] one offense" with "enhancements based on the type of harm that was caused."

This reliance is doubly mistaken. First, <u>Catala Fonfrias</u> addressed whether convicting a defendant of violating the death-resulting forms of sections 241 and 242 violated his right against double jeopardy, not what parts of those sections needed to be proved to a jury. <u>Id.</u> at 425-26. Second, and more important, even though some dicta in <u>Catala Fonfrias</u> suggests that section 242 contains only a single offense, such an interpretation of the statute is simply not possible after the subsequent decisions in <u>Apprendi</u> and <u>Recuenco</u> made clear that factors that increase the maximum sentence are elements of the charged offense. Therefore, to indict a person for the form of the offense resulting in a lesser maximum sentence and then convict him of the enhanced offense with a higher maximum sentence is to constructively amend the indictment. <u>Cf.</u> <u>Lnu</u>, 544 F.3d at 369.

It does not follow, however, from the fact that Díaz-Colón's indictment was constructively amended that his conviction must be vacated or reversed. Because Díaz-Colón did not challenge

the constructive amendment at trial[4] we review it only for plain error. Brandao, 539 F.3d at 57. As we have already noted, there was error here and it was plain to anyone who read the indictment and knew the basic law. However, reversal for plain error requires, as well, a finding that the error prejudiced the defendant. Id. at 60. Díaz-Colón makes no claim of surprise or of prejudice in planning or maintaining a defense. Indeed, the lack of objection suggests that defense counsel (in the context of a case in which death clearly resulted from the charged acts) assumed that the indictment was broader than it was. This is especially so given the plainly obvious (and unobjected to) inclusion of a specific question in the verdict form about whether death resulted. In any event, the record is clear that Andrades-Tellería's death indisputably resulted from the conspiracy charged.

---

[4] Díaz-Colón did later raise the issue at sentencing. Some of our precedent says that a defendant may preserve an objection to instructions that describe a lower level of the offense than that alleged in the indictment by raising the objection at sentencing. See United States v. Pérez-Ruiz, 353 F.3d 1, 14 (1st Cir. 2003); United States v. Nelson-Rodríguez, 319 F.3d 12, 47 (1st Cir. 2003). Those cases, however, are premised on the proposition that a defendant is not obligated to request an instruction that could result in higher punishment than the instruction proposed by the government. Even assuming that that rationale makes sense as a matter of fact and procedure, and should remain good law, it would not be applicable here. Rather, Díaz-Colón argues that the jury instructions exposed him to a punishment higher than that available for the crime charged in his indictment. He therefore needed to object at the jury instruction stage to preserve his argument on appeal.

Given this record, the only prejudice to which Díaz-Colón points is the possibility that the jury itself experienced "confusion about the elements charged and instructed to [it]." Reviewing the jury verdict form and related jury instructions we see no "reasonable probability," United States v. Dominquez Benitez, 542 U.S. 74, 81-82 (2004) (internal quotation marks omitted), of any confusion that could have affected the outcome of the trial. The verdict form separately asked two questions about each defendant for each of count five and count six. First, it asked whether the defendant was guilty of the offense[5] charged in the indictment. Second, if the jury found the defendant guilty when answering the first question, the verdict form also required it to say whether it also found that the defendant caused Andrades-Tellería's death. The jury therefore could not have been confused about what it was finding, nor could anyone misread its verdict. Díaz-Colón's very limited prejudice argument, and with it his constructive amendment claim, therefore fails on plain error review.

---

[5]  Díaz-Colón also notes that the jury was instructed that to convict on the base level offense under count six it had to find that bodily injury resulted, which is an element of the intermediate form of section 242, not the base level. The verdict form, however, gave the jurors only two choices: the base level offense, and the death-resulting form. If the jurors incorrectly believed they needed to find bodily injury to convict for the former, that could only have helped Díaz-Colón.

-21-

**2. Purported Constructive Amendment on the Conspiracy to Commit Carjacking Count**

In addition to charging Díaz-Colón under sections 241 and 242 with conspiring to deprive and depriving Andrades-Tellería of his rights, the indictment also charged Díaz-Colón with a conspiracy offense under 18 U.S.C. § 371, which provides as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

> If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

As the statutory language makes clear, while section 371 provides a lower penalty when the object of the conspiracy is a misdemeanor, it does not differentiate between types or severity of felonies. Certainly an indictment for violating section 371 by committing an "offense against the United States" must specify the underlying offense that is the subject of the conspiracy. But where that offense has both lesser included and enhanced forms, all of which are felonies, proof of the lesser included form of the offense results in no different penalty than proof of the enhanced form. Allegations of elements that would result in enhanced penalties on a charge of committing the underlying offense itself

-22-

are thus entirely unnecessary to support a charge of violating section 371.

Here, inexplicably, the indictment nevertheless charged as the offense that was the aim of the conspiracy not simply carjacking, under 18 U.S.C. § 2119(1), but carjacking resulting in death under section 2119(3).[6] Having thus unnecessarily undertaken to prove the enhanced form of the offense charged as the aim of the conspiracy, the government then successfully proposed jury instructions that can best be read as allowing the jury to convict if it found only that Díaz-Colón conspired to commit the base form.[7] The verdict form, in turn, asked only whether Díaz-Colón

---

[6] Section 2119 provides that:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

[7] Specifically, the jury instructions read, inter alia:

For you to find the defendants guilty of this conspiracy, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

was guilty of "the charge in Count One of the Superseding Indictment, conspiracy to commit the crime of carjacking." As the government's ambition thus waxed and waned, Díaz-Colón made no objection to any of this at trial. On appeal, he now seeks reversal of his conviction because, he says, he was convicted on a count for which he was not indicted. We review for plain error. See, e.g., Brandao, 539 F.3d at 60-62.

As we noted above, the element (death resulting) contained in the indictment but omitted from the instructions and, arguably, the verdict form, was entirely immaterial to a section 371 charge in that the maximum and minimum sentences remained the same whether the enhanced or lesser included form of the carjacking offense was proven. While there was clearly a mistake in drafting the indictment, it was not a mistake that resulted in any prejudicial error. Cf. United States v. Mubayyid, 658 F.3d 35, 48-54 (1st Cir. 2011) ("In general, a defendant can hardly be heard to complain when the government's proof at trial establishes a scheme similar to but somewhat narrower in breadth and malignity

---

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to commit carjacking; and

Second, that the defendants willfully joined in that agreement; and

Third, that one of the conspirators (not necessarily one of the defendants) committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

than that charged in the indictment." (internal quotation marks omitted)). Indeed, Díaz-Colón's own counsel does not argue that the difference between the indictment and instructions, no matter how characterized, prejudiced him. That fact alone defeats his argument on plain error review. See, e.g., United States v. García-Pastrana, 584 F.3d 351, 386 (1st Cir. 2009) (no plain error in jury instructions where defendant did not show he was prejudiced).[8]

### 3. Withdrawal of the plea offer

In one of his supplemental pro se filings Díaz-Colón argues that the government improperly withdrew a plea offer it had made to him in March 2011. The final version of the proposed plea agreement was emailed to Díaz-Colón's counsel on March 28, 2011, and provided that Díaz-Colón could accept the government's plea offer by submitting a motion to change his plea, which he duly did on June 2, 2011. A change of plea hearing was scheduled for June

---

[8] Díaz-Colón's brief might also be read to suggest that the jury instructions on count one were inadequate because they failed to inform the jury of the elements of carjacking. This argument fails because the elements of carjacking were included in count two. Díaz-Colón cites no authority for the proposition that when a jury is instructed both on a crime and on conspiracy to commit that crime the instructions on the elements of that crime must be included twice, once in the instructions on each count. Although such duplicate instructions might be advisable in some complex cases, requiring them, at least in a case like this one, would cut against our normal practice of considering jury instructions "as a whole to determine whether they correctly summarize the relevant law." United States v. Brown, 669 F.3d 10, 30 (1st Cir. 2012) (internal quotation marks omitted). There was therefore no error in the instructions the district court gave.

7, but continued to June 15. Either the day before the change of plea hearing or at it (the parties disagree and the record is not clear) the government withdrew its offer. According to the court's minute order, at the hearing the government informed the court that it was withdrawing the plea because it had received new evidence about Díaz-Colón's involvement in the crime. The court ordered briefing on the question of whether the government could withdraw its offer, ultimately ruling that it could. Díaz-Colón's plea remained not guilty.

Díaz-Colón argues first that the government's withdrawal of its plea offer violated his due process rights, and, second, that he was entitled to specific performance of the plea agreement under contract law. Díaz-Colón's due process argument fails because he "did not enter a guilty plea, did not forgo a jury trial on any charge, and did not otherwise detrimentally rely on the government's promise . . . [and therefore h]e is in no worse position than if no offer had ever been made by the government." United States v. Papaleo, 853 F.2d 16, 18 (1st Cir. 1988). He therefore had no constitutional right to enforce the plea bargain. Id. at 19.

The failure of Díaz-Colón's constitutional argument, though, does not foreclose his contract argument. "While plea agreements are a matter of criminal jurisprudence, most courts, including this one, have held that they are also subject to

contract principles."  Id.  In Papaleo, like this case, a defendant sought to compel the government to abide by a plea offer it made and the defendant accepted (by signing it, in that case) but which it withdrew before he in fact pled guilty.  Id. at 17-18.  We refused to enforce the agreement on contract principles because it lacked mutuality of obligation as "nowhere in the plea agreement [was] there an explicit promise by Papaleo to do anything," an omission that was "understandable in light of the fact that a court cannot force a defendant to plead guilty because of a promise in a plea agreement."  Id. at 19 (citing  Fed. R. Crim. P. 11).

We recognized, nonetheless, that "two parties may enter into a contract, even though the agreement lacks 'mutuality of obligation' because one party's promise is unenforceable by rule of law."  Id.  For that proposition we cited, inter alia, Restatement (Second) of Contracts § 78 (1981), which provides that "[t]he fact that a rule of law renders a promise voidable or unenforceable does not prevent it from being consideration,"  and section 79, which provides that lack of mutuality of obligation does not prevent contract formation where there is consideration.  However, we also reasoned that, because "[w]e must assume . . . that the government acted rationally . . . [a]bsent more explicit promissory language, we will not read the ambiguous language of the 'agreement' as containing bilateral promises such as to bind the government to a contract unenforceable against the other party."  Id. at 19-20.

In other words, absent evidence to the contrary, we will not assume that the government has bound itself contractually to offer a particular plea even if it discovers new information before the change of plea hearing. Instead, unless a plea agreement states otherwise, we will presume that the agreement itself simply documents "an offer by the government: if the defendant pleads guilty and if that plea is accepted by the court, then the government will perform as stipulated in the agreement." Id. at 20. However, "[u]ntil performance [takes] place by [the defendant], the government [is] free to withdraw its offer." Id. In short, the obligation to perform is conditional on actual performance by the defendant (or perhaps some other form of detrimental reliance).[9] Other circuits have taken the same approach. See United States v. Norris, 486 F.3d 1045, 1051-52 (8th Cir. 2007) (mentioning "the general rule that the court must have accepted a guilty plea before the parties may be bound to an associated plea agreement"); United States v. Savage, 978 F.2d 1136, 1138 (9th Cir. 1992) ("[N]either the defendant nor the government is bound by a plea agreement until it is approved by the court.").

---

[9] Díaz-Colón suggests that his case can be distinguished from Papaleo because the government's offer to him, unlike the offer in Papaleo, said that he could accept it by filing a change of plea motion. In both cases, however, the defendant would not have been bound until a plea was actually entered and so we see no reason to think the government intended to bind itself without any assurance it would get something in return.

Díaz-Colón points to no case in which the government has been precluded from abandoning a plea agreement when the defendant has not yet pled guilty or otherwise detrimentally relied on the government's offer. He suggests only that merely by filing a change of plea motion he relied on the government's offer. That may be right, but there is no reason to think that filing that motion was detrimental to him. Two weeks separated his acceptance of the plea offer and the government's decision to withdraw it, and the trial did not occur for more than another month after the withdrawal. Nor did Díaz-Colón apparently see any need to seek more time to prepare for trial. The district court was therefore correct that the plea agreement had not yet become unconditional, and that the government was therefore permitted to withdraw it, given the absence of any detrimental reliance at all.

### 4. Inconsistent Jury Verdicts

The jury verdict form for counts five, conspiracy against rights, 18 U.S.C. § 241, and six, deprivation of rights under color of law, 18 U.S.C. § 242, included a special interrogatory for each count. That special interrogatory, posed separately for each defendant and to be answered only if the jury found the defendant guilty of the underlying crime, asked whether death resulted from that violation. As to Díaz-Colón, the jury answered yes on count five, but no on count six. Díaz-Colón argues that no rational jury could give this set of answers. That may be right, but logically

inconsistent jury verdicts on multiple counts are not grounds for reversing a conviction because of "the Government's inability to invoke review" of inconsistent verdicts in its favor, "the general reluctance [of courts] to inquire into the workings of the jury," and the fact that inconsistent verdicts could be explained as a "possible exercise of leniency" by the jury on one count.  See United States v. Powell, 469 U.S. 57, 68-69 (1984).

Díaz-Colón attempts to distinguish Powell on the grounds that it concerned inconsistent verdicts on two separate crimes with the same underlying facts while he challenges inconsistent answers to the same interrogatory in connection with two counts.  Even if that were a coherent distinction, which we doubt, none of the reasons Powell cited for its ruling apply with any less force in this situation.  We are especially unwilling to find an exception to Powell because the Court noted that its ruling was simply a reaffirmation of the rule announced in Dunn v. United States, 284 U.S. 390 (1932), and explicitly criticized appeals courts which had announced exceptions to that rule, holding that Dunn should remain "without exception."  Powell, 469 U.S. at 69.

### III. Conclusion

For the foregoing reasons the judgment of the district court is affirmed.

So ordered.

| Count | Charge | Vizcarrondo-Casanova | Aponte-Sobrado | Díaz-Colón |
|---|---|---|---|---|
| 1 | Conspiracy to commit carjacking 18 U.S.C. §§ 371, 2119(3) | Guilty | Guilty | Guilty |
| 2 | Carjacking 18 U.S.C. §§ 2119, 2 | Guilty | Guilty | Not Charged |
| 3 | Brandishing a firearm in furtherance of a crime of violence 18 U.S.C. §§ 924(c)(1)(A)(ii), 2 | Not Guilty | Not Guilty | Not Charged |
| 5 | Conspiracy against rights 18 U.S.C. § 241 | Guilty | Guilty | Guilty |
|  | Death resulting? | Yes | Yes | Yes |
| 6 | Deprivation of rights under color of law 18 U.S.C. § 242 | Guilty | Guilty | Guilty |
|  | Death resulting? | Yes | Yes | No |
| 8 | Possession by a felon of a firearm convicted felon 18 U.S.C.A. §§ 922(g)(1), 924(a)(2) | Not Charged | Not Guilty | Not Charged |